412 U.S. 47 (1973)
MICHIGAN
v.
PAYNE.
No. 71-1005.
Supreme Court of United States.
Argued February 22, 1973.
Decided May 21, 1973.
CERTIORARI TO THE SUPREME COURT OF MICHIGAN.
John A. Smietanka argued the cause for petitioner. With him on the briefs were Frank J. Kelley, Attorney General of Michigan, Robert A. Derengoski, Solicitor General, and Ronald J. Taylor.
James R. Neuhard argued the cause for respondent. With him on the brief was Arthur J. Tarnow.
MR. JUSTICE POWELL delivered the opinion of the Court.
A writ of certiorari was granted in this case, 409 U. S. 911 (1972), to decide whether the due process holding of North Carolina v. Pearce, 395 U. S. 711, 723-726 (1969), is to be given retroactive effect. For the reasons that follow, we hold today that this decision is nonretroactive.

I
Respondent, Leroy Payne, pleaded guilty in a county circuit court in Michigan to a charge of assault with intent to commit murder in connection with an armed *48 attack upon two sheriff's deputies. In March 1963 he was sentenced to a prison term of from 19 to 40 years. Several years later, respondent's conviction and sentence were set aside when a hearing, ordered by the Michigan Court of Appeals, disclosed that his confession and subsequent guilty plea were involuntary. Following a retrial, at which he exercised his rights to trial by jury and to plead innocent, respondent again was found guilty on the same assault charge. On August 30, 1967, he was resentenced to prison from 25 to 50 years with full credit for all time served under the prior sentence. During the resentencing hearing, the judge explained that the higher sentence was "based on the nature of the crime and on the impressions which I formed of [respondent] and of the crime."
Respondent appealed to the Michigan Court of Appeals, which affirmed his conviction and approved the higher sentence. 18 Mich. App. 42, 170 N. W. 2d 523 (1969). While the case was pending before the Michigan Supreme Court, the trial judge who had presided over respondent's second trial was requested to submit an affidavit detailing his reasons for imposing a higher sentence. The judge's affidavit stated that his sentencing determination was based primarily on (i) his personal belief that respondent's attitude since the first sentencing proceeding had changed from one of regret to remorselessness, (ii) his view that respondent's alibi defense, given under oath, was a "tissue of lies," and (iii) his heightened opportunity to learn of the details of the crime during the three-day trial.[1]
*49 The Michigan Supreme Court, in a 4-to-3 decision, upheld the conviction but rejected the higher sentence as violative of the due process restrictions established in North Carolina v. Pearce, supra. 386 Mich. 84, 191 N. W. 2d 375 (1971). The court recognized that this Court had not yet decided whether Pearce applied to resentencing proceedings which, as in this case, occurred prior to Pearce's date of decision.[2] While declining to predict how the retroactivity question would ultimately be resolved, the Michigan Supreme Court decided to apply Pearce to the case then before it "pending clarification" by this Court. Id., at 90 n. 3, 191 N. W. 2d, at 378 n. 2. Before this Court, the State contends that Pearce should not be applied retrospectively, but that, even if applicable, the state supreme court erred in holding the higher sentence invalid under the Pearce test. Because we hold today that Pearce does not apply retroactively, we do not reach the State's second contention.[3]

*50 II
In Pearce, the Court emphasized that "[i]t can hardly be doubted" that, while "there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial," it would be entirely impermissible for judges to render harsher penalties as punishment for those defendants who have succeeded in getting their convictions reversed. 395 U. S., at 723. "[V]indictiveness" against a defendant for having exercised his rights to appeal or to attack his conviction collaterally, the Court held, "must play no part in the sentence [a defendant] receives after a new trial." Id., at 725. In so holding, the Court recognized that "fundamental notions of fairness embodied within the concept of due process" absolutely preclude the imposition of sentences based upon such a " `retaliatory motivation.' " Chaffin v. Stynchcombe, ante, at 25. No "new" constitutional rule was thereby established and it cannot be questioned that this basic due process protection articulated *51 in Pearce is available equally to defendants resentenced before and after the date of decision in that case. On this point the parties do not disagree.
The dispute in this case centers, instead, around the "prophylactic"[4] limitations Pearce established to guard against the possibility of vindictiveness in the resentencing process. Those limitations, applicable "whenever a judge imposes a more severe sentence upon a defendant after a new trial," 395 U. S., at 726, require that the sentencing judge's reasons "must affirmatively appear," and that those reasons "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Ibid. The question here is whether these restrictions govern resentencing proceedings predating Pearce.
The contours of the retroactivity inquiry have been clearly delineated in numerous decisions over the last decade. The test utilized repeatedly by this Court to ascertain whether "new" constitutional protections in the area of criminal procedure are to be applied retroactively calls for the consideration of three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 388 U. S. 293, 297 (1967). See also Linkletter v. Walker, 381 U. S. 618, 629, 636 (1965); Tehan v. Shott, 382 U. S. 406, 410-418 (1966); Johnson v. New Jersey, 384 U. S. 719, 726-727 (1966).
The two purposes for the resentencing restrictions imposed by Pearce were to ensure (i) "that vindictiveness against a defendant for having successfully attacked his first conviction . . . [would] play no part in the sentence *52 he receives after a new trial . . ." and (ii) that apprehension of such vindictiveness would not "deter a defendant's exercise of the right to appeal or collaterally attack his first conviction. . . ." 395 U. S., at 725; Colten v. Kentucky, 407 U. S. 104, 116 (1972). The latter purpose is not pertinent to this case, since respondent was not deterred from exercising his right to challenge his first conviction. But, in any event, we think it clear that this function of the new resentencing rules could be served only in futuro: nothing in Pearce suggests that the Court contemplated that its decision might provide a ground for the untimely reopening of appeals by defendants who decided not to appeal prior to the date of decision in Pearce.[5] See James v. Copinger, 441 F. 2d 23 (CA4 1971).
The first-articulated purpose of the Pearce rulesto protect against the possibility that actual vindictiveness will infect a resentencing proceedingdeserves closer scrutiny. Unlike the purposes underlying many of the decisions heretofore accorded retrospective application,[6] this purpose does not implicate the " `fair determination' of . . . guilt or innocence." Roberts v. Russell, 392 U. S. 293, 294 (1968) (emphasis supplied). It does, however, involve questions touching on the "integrity" of one aspect of the judicial process. McConnell v. Rhay, 393 U. S. 2, 3 (1968). The Pearce restrictions serve to ensure *53 that resentencing decisions will not be based on improper considerations, such as a judge's unarticulated resentment at having been reversed on appeal, or his subjective institutional interest in discouraging meritless appeals. By eliminating the possibility that these factors might occasion enhanced sentences, the Pearce prophylactic rules assist in guaranteeing the propriety of the sentencing phase of the criminal process. In this protective role, Pearce is analogous to Miranda v. Arizona, 384 U. S. 436 (1966), in which the Court established rules to govern police practices during custodial interrogations in order to safeguard the rights of the accused and to assure the reliability of statements made during those interrogations. Thus, the prophylactic rules in Pearce and Miranda are similar in that each was designed to preserve the integrity of a phase of the criminal process. Because of this similarity, we find that Johnson v. New Jersey, 384 U. S. 719 (1966), which held Miranda nonretroactive, provides considerable guidance here. See also Jenkins v. Delaware, 395 U. S. 213 (1969).
It is an inherent attribute of prophylactic constitutional rules, such as those established in Miranda and Pearce, that their retrospective application will occasion windfall benefits for some defendants who have suffered no constitutional deprivation. Miranda's well-known warning requirements provided a protection "against the possibility of unreliable statements in every instance of in-custody interrogation," and thereby covered many "situations in which the danger [was] not necessarily as great as when the accused is subjected to overt and obvious coercion." Johnson v. New Jersey, supra, at 730 (emphasis supplied). Thus, had Miranda been applied retroactively, it would have required the reversal of many convictions in which no serious constitutional violation had occurred. Id., at 731. Likewise, the retroactive application of Pearce would require the repudiation *54 of many sentences rendered under circumstances in which there was no genuine possibility that vindictiveness played a role. Judicial impropriety in the resentencing process, albeit intolerable wherever it happens, surely is not a common practice. Indeed, nothing in Pearce intimates that the Court regarded it as anything more than an infrequently appearing blemish on the sentencing process.[7] Absent countervailing considerations rooted in the purposes underlying a new rule, this factorthat retroactive application of such broadly protective rules would occasion reversals in many instances in which no actual prejudice has been sufferedpoints toward a ruling of prospectivity.
Nonretroactivity is also suggested by the second similarity between Miranda and Pearce. While each created a protective umbrella serving to enhance a constitutional guarantee, neither conferred a constitutional right that had not existed prior to those decisions. The right against use of an involuntary confession long preceded Miranda just as the right to be free from fundamentally unfair sentencing considerations predated Pearce. Supra, at 50. Because these foundational rights remain available to defendants in pre-Miranda and pre-Pearce cases, a decision of nonretroactivity is less likely to result in the continued incarceration of those whose convictions or sentences rest on unconstitutional acts.[8]Linkletter v. Walker, 381 U. S., at 640 (Black, J., dissenting).
*55 Of course, the question of the impact of particular decisions on the reliability and fairness of any aspect of a criminal proceeding is inherently a matter of balancing "probabilities." Johnson v. New Jersey, 384 U. S., at 729; Adams v. Illinois, 405 U. S. 278, 281 (1972). Yet in view of the fact that, if retroactive, Pearce would apply to innumerable cases in which no hint of vindictiveness appears, coupled with the consideration that due process claims may always be made in those prior cases in which some evidence of retaliatory motivation exists,[9] we have little doubt that the "probabilities" in this case preponderate in favor of a ruling of nonretroactivity.[10]
Although the remaining factorsreliance and burden on the administration of justicehave been regarded as having controlling significance "only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity," Desist v. United States, 394 U. S. 244, 251 (1969), those considerations also support the nonretroactivity of Pearce. The result in Pearce was not "foreshadowed" by any prior decision of this Court.[11] Indeed, prior to Pearce, resentencing judges were bound by no requirement that they articulate their reasons and *56 generally enjoyed a wide discretion in terms of the factors they might legitimately consider. See Williams v. New York, 337 U. S. 241 (1949). Nor could it be said that the Court's decision was clearly forecast by any trend of lower court decisions. In Pearce itself the Court noted that lower federal and state courts were divided on all of the questions posed. 395 U. S., at 715 n. 5. Under these circumstances, judicial reliance on prior law was certainly justifiable.[12]
Because of that reliance, it is fair to assume that in prior years few, if any, judges complied during resentencing with Pearce's recordation requirement, and that they often considered a variety of factors relating to the defendant and his crime which might or might not have fallen within the Pearce standard. We have been presented with no statistical indications as to how many persons received increased penalties after retrials.[13] We cannot say, however, that the potential interference with the administration of justice would be insubstantial if Pearce were applied retroactively. In order to comply with Pearce, a resentencing judgeassuming he is still on the bench or otherwise availablewould be required to make a factual determination as to the reasons for sentences he may have meted out years in the past. *57 Compliance with that requirement would present considerable difficulties, since judges, like witnesses in criminal trials, lack infallible memories and perfect records of their motivations.[14]Linkletter v. Walker, 381 U. S., at 637. While we would not shy from imposing these burdens were we persuaded that it was necessary to do so in order to effectuate the purposes underlying Pearce, we have found no such need here. In sum, upon application of the three-part test, we hold that the Pearce requirements are not to be accorded retroactive application.[15]

III
Since the resentencing hearing in this case took place approximately two years before Pearce was decided, we hold that the Michigan Supreme Court erred in applying its proscriptions here. Accordingly, the judgment of that court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
*58 MR. JUSTICE DOUGLAS, dissenting.
We deal here with the guarantee contained in the Fifth Amendment, applicable to the States by reason of the Fourteenth, Benton v. Maryland, 395 U. S. 784, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The construction given that clause was applied retroactively in North Carolina v. Pearce, 395 U. S. 711; and I think that Payne as well as Pearce should have the benefit of the "new" constitutional rule. My views have been at odds with those of the Court as witnessed by the dissent of Mr. Justice Black in Linkletter v. Walker, 381 U. S. 618, 640, which I joined, and by my separate dissent in Desist v. United States, 394 U. S. 244, 255. I could understand making a "new" constitutional rule applicable only prospectively. But I cannot bring myself to making the "new" rule applicable to some but not to others. If a State has violated the Federal Constitution in convicting or sentencing a prisoner, I see no way of denying him relief from that unconstitutional trial or unconstitutional sentence.
The Double Jeopardy Clause in my view was designed to discourage the abusive use by the Executive and Judicial Branches of the awesome power of government over the individual. Jeopardy attaches once the trial starts. If there is error in that trial and as a result a new trial is had, the Government cannot impose an added or increased sentence on the second trial. That is my view, as explained in North Carolina v. Pearce, supra, at 726-737. Respondent received a sentence of 19 to 40 years on his first trial and a greater one of 25 to 50 years on his second trial. I therefore would affirm the judgment below.
*59 MR. JUSTICE MARSHALL, dissenting.
The Court today holds that no limitations need be placed on resentencings that occurred before the date of decision in North Carolina v. Pearce, 395 U. S. 711 (1969). I believe however, that the State has an obligation to present to the court reviewing the second conviction evidence from which that court can determine whether a new sentence, more severe than that imposed at a prior trial, resulted in part from the sentencing authority's desire to punish the defendant for successfully appealing his first conviction.[1] I therefore respectfully dissent.

I
This case raises the issue of retroactivity only because of the almost unbelievable sluggishness of the appellate process in Michigan. Payne's second sentence was imposed on August 30, 1967, nearly two years before Pearce was decided. However, the Michigan Court of Appeals did not decide Payne's appeal until July 28, 1969, one month after the decision in Pearce. The Michigan Supreme Court considered the case for two more years, finally deciding it on November 9, 1971. Had the appellate process in Michigan been at all expeditious, this Court might have used Payne's case as the vehicle to decide *60 that harsher sentences on reconviction could be justified only by objective evidence of post-sentencing conduct by the defendant, the rule adopted in Pearce. The only difference between Pearce's case and Payne's, then, is that the former moved up to this Court more quickly than the latter. Different treatment of two cases is justified under our Constitution only when the cases differ in some respect relevant to the different treatment.[2] And a difference in the speed with which a judicial system disposes of an appeal is not related in any way to the purposes served by the limitations that Pearce placed on resentencing. Thus, considerations of fairness rooted in the Constitution lead me to conclude that cases in the pipeline when a new constitutional rule is announced must be given the benefit of that rule.
The rule adopted by the Court today is curious in another way. The Court appears to say that a defendant who failed to appeal his first conviction out of "a reasonably based fear of actual vindictiveness," ante, at 52 n. 5, is entitled to review of his conviction. Cf. Fay v. Noia, 372 U. S. 391, 396-397, n. 3 (1963).[3] If his appeal is successful, his new trial will occur after the date of decision in Pearce. Thus, any new sentence will be *61 subject to the limitations imposed by Pearce. The rather strange result is that someone like Payne, who adhered to state procedural rules for vindicating his right to an error-free trial, may receive an enhanced sentence without limitation, while someone who did not adhere to those rules may not have his sentence increased unless the requirements of Pearce are met. I suppose that anomalies are occasionally inevitable, but I submit that we should consider very carefully any rule of retroactivity that has the effect of penalizing compliance with state procedural rules.

II
The Court applies the now-familiar three-pronged test to determine whether Pearce should be given retroactive effect, and it reaches the now-familiar result of nonretroactivity.[4] I believe that principled adjudication requires the Court to abandon the charade of carefully balancing countervailing considerations when deciding the question of retroactivity. Inspecting the cases dealing with retroactivity, I find that they appear to fall into three groups. In some cases, this Court has held that the trial court lacked jurisdiction in the traditional sense. See, e. g., Benton v. Maryland, 395 U. S. 784 (1969); Waller v. Florida, 397 U. S. 387 (1970). Those holdings have been made fully retroactive. Ashe v. Swenson, 397 U. S. 436 (1970); Robinson v. Neil, 409 U. S. 505 (1973). Cf. United States v. U. S. Coin & Currency, 401 U. S. 715 (1971). In other cases the Court announced a rule that was central to the process of determining guilt or innocence, and whose application might well have led to the *62 acquittal of the defendant. See, e. g., Gideon v. Wainwright, 372 U. S. 335 (1963); In re Winship, 397 U. S. 358 (1970). Those holdings too have been given retroactive effect. Pickelsimer v. Wainwright, 375 U. S. 2 (1963); Ivan V. v. New York, 407 U. S. 203 (1972). Cf. Adams v. Illinois, 405 U. S. 278 (1972). All other constitutional rules of criminal procedure have been given prospective effect only.[5]
I confess that I have been unable to discover a principled basis for that threefold classification, but it does appear to be the factor operating in our cases. And I see little point in forcing lower courts to flounder without substantial guidance in the morass of our cases, by informing them that they are to apply a balancing test, when in fact it invariably occurs that the balancing test results in holdings of nonretroactivity. Furthermore, it demeans this Court to pretend to consider a variety of factors if, no matter how those factors are arrayed, the result is predetermined. An open-minded examination of this Court's cases on retroactivity compels the conclusion that the Court divides cases into several classes, and it is the classification, not the three-pronged test, that determines the result. Our time would be better spent, I think, in attempting to delineate the basis for those classifications, and to derive them from some constitutional principles, rather than in "applying" a balancing test. Indeed, it might have been thought that *63 Robinson v. Neil, supra, had begun the task of rationalizing our cases, but apparently that is not so.

III
The holding of Pearce is a simple one: the Due Process Clause requires States to adopt procedures designed to minimize the possibility that a new sentence after a successful appeal will be based in part on vindictiveness for the defendant's having taken the appeal. The Court agrees that "this basic due process protection . . . is available equally to defendants resentenced before and after the date of decision in that case." Ante, at 50, 51. The question then is what procedures are required to insure that that protection has been afforded defendants resentenced before Pearce was decided. This question, like many of those involving retroactivity, relates to the integrity of the judicial process, not to the limitations placed by the Constitution on police behavior. One can agree that the precise requirements of Pearce are inappropriate for retrospective application, largely because they are procedurally ill-adapted to the problem, yet disagree with the Court that the States need do nothing at all to convince a reviewing court that vindictiveness played no part in the resentencing. See e. g., Commonwealth v. Allen, 443 Pa. 96, 102, 277 A. 2d 803 (1971).
The issue need not be framed as the "retroactivity" of Pearce. The problem, as I see it, is to devise procedures that will permit reviewing courts to determine whether the requirements of the Due Process Clause have been met. In Pearce we concluded that it would be enough for a judge, on resentencing a defendant, to state his reasons for imposing a more severe sentence. If the more severe sentence was based upon objective information, placed on the record, concerning the conduct of the *64 defendant after the first sentencing, the more severe sentence was permissible. Such a rule, although not absolutely guaranteeing that vindictiveness will play no part,[6] nonetheless substantially reduces the possibility that it will, without significantly interfering with the judge's lawful discretion.
A rather similar procedure would accomplish the same result for defendants resentenced before Pearce was decided. If a defendant did receive a harsher sentence after a successful appeal, and he seeks to have it reduced to the original sentence, the State should be required to present evidence that the new sentence was based on post-sentence conduct. In the absence of such evidence, the sentence must be reduced.[7] The Court suggests that such a procedure would "occasion windfall benefits for some defendants who have suffered no constitutional deprivation." Ante, at 53. That assertion must be considered more closely.
As the Court notes, there is little evidence that more severe sentences are often imposed. It cites an informal survey suggesting that 12% of reconvicted defendants receive higher sentences. Ante, at 56 n. 13. Even if that estimate is only half as large as the actual figure for pre-Pearce cases, still there are clearly very few defendants who have received harsher sentences. With respect *65 to many of them, it will not be difficult to produce evidence supporting the new sentence. As in Moon v. Maryland, 398 U. S. 319 (1970), and Odom v. United States, 400 U. S. 23 (1970), the sentencing judge might indicate by affidavit or order the grounds for his sentencing decision. If memories have faded, the State might show that a presentence report considered by the judge recited post-sentence conduct by the defendant that would justify the harsher sentence.
Thus, I do not think that it can fairly be said that the requirements I would impose would in fact result in windfall benefits to "innumerable" defendants, ante, at 55; they would accrue to those few defendants who were convicted, successfully appealed, were reconvicted, and received harsher sentences so long ago that the State cannot produce evidence from which a reviewing court could find that vindictiveness played no part in the sentencing decision.[8] And the "windfall benefits" would impair no substantial state interest in incarcerating those few offenders. Unlike the suppression of probative evidence that might severely limit the State's ability to secure a conviction of a person who undoubtedly committed an offense, here the remedy is simply the reduction of sentence. North Carolina v. Rice, 404 U. S. 244, 247 (1971). The sentence to be served would be one that had already been found appropriate by one *66 judge, and would therefore satisfy the various interests advanced by incarceration.[9]
For these reasons, I dissent.
MR. JUSTICE STEWART joins Part III of this opinion.
NOTES
[1] In his affidavit, the second sentencing judge indicated that a different judge who presided over respondent's prior guilty plea and sentencing hearings did not have as good an opportunity to become fully informed of the details of the "deliberate, cold-blooded attack." In a subsequent amendatory affidavit filed by the same judge, he corrected his prior affidavit by stating that the first judge did have "some limited opportunity to see and hear [respondent] when he testified as a witness for the prosecution against his accomplice" in a separate trial. The parties in this case now agree that the first judge did preside over the trial of respondent's codefendant before sentencing respondent and that respondent did testify at that trial. The parties continue, however, to dispute whether that opportunity was as complete as the opportunity afforded the second judge, and, if not, whether this is a permissible consideration in resentencing under Pearce. Because of the manner in which we dispose of this case, we need not resolve this controversy. See n. 3, infra.
[2] This Court has twice previously granted certiorari to resolve this question, but on each occasion the writ was dismissed as improvidently granted. Moon v. Maryland, 398 U. S. 319 (1970) (cert. granted, 395 U. S. 975 (1969)); Odom v. United States, 400 U. S. 23 (1970) (cert. granted, 399 U. S. 904 (1970)).
[3] This Court has consistently declined to reach out to resolve unsettled questions regarding the scope or meaning of decisions establishing "new" constitutional requirements in cases in which it holds any such decisions nonretroactive. See Stovall v. Denno, 388 U. S. 293 (1967) (holding United States v. Wade, 388 U. S. 218 (1967), and Gilbert v. California, 388 U. S. 263 (1967), nonretroactive without resolving the question whether those cases were applicable to preformal accusation confrontations, a question later decided in Kirby v. Illinois, 406 U. S. 682 (1972)); DeStefano v. Woods, 392 U. S. 631 (1968) (holding Duncan v. Louisiana, 391 U. S. 145 (1968), and Bloom v. Illinois, 391 U. S. 194 (1968), nonretroactive and declining to decide whether a summary contempt proceeding that results in a one-year sentence is a "serious" offense requiring trial by jury, a question later decided in Baldwin v. New York, 399 U. S. 66 (1970)); Carcerano v. Gladden (a companion case with DeStefano, in which the Court declined to decide whether the right to jury trial contemplated by Duncan also required a unanimous verdict, a question later decided in Apodaca v. Oregon, 406 U. S. 404 (1972)); Elkanich v. United States (a companion case with Williams v. United States, 401 U. S. 646 (1971), holding Chimel v. California, 395 U. S. 752 (1969), nonretroactive and declining to decide whether the search was otherwise compatible with the Chimel limitations on searches incident to lawful arrests).
[4] Chaffin v. Stynchcombe, ante, at 25; Colten v. Kentucky, 407 U. S. 104, 116, 118 (1972).
[5] This is not to suggest, of course, that there may not be specific cases in which a convicted defendant might show that his initial waiver of his right to appeal was involuntary because caused by a reasonably based fear of actual vindictiveness on the part of a particular judge. Cf. North Carolina v. Pearce, 395 U. S., at 725 n. 20.
[6] See, e. g., In re Winship, 397 U. S. 358 (1970) (held retroactive in Ivan V. v. New York, 407 U. S. 203 (1972)); Barber v. Page, 390 U. S. 719 (1968) (held retroactive in Berger v. California, 393 U. S. 314 (1969)); Bruton v. United States, 391 U. S. 123 (1968) (held retroactive in Roberts v. Russell, 392 U. S. 293 (1968)); Gideon v. Wainwright, 372 U. S. 335 (1963).
[7] The most that may be said is that the Court in Pearce found that "increased sentences on reconviction are far from rare," 395 U. S., at 725 n. 20, and that it was persuaded that vindictiveness played a role in a sufficient number of those cases to "warrant the imposition of a prophylactic rule." Colten v. Kentucky, 407 U. S., at 116.
[8] See Johnson v. New Jersey, 384 U. S. 719 (1966). See also Stovall v. Denno, 388 U. S., at 299 (in pre-Wade-Gilbert cases "it remains open to all persons to allege and prove . . . that the confrontation . . . infringed his right to due process of law"); cf. Halliday v. United States, 394 U. S. 831, 833 (1969).
[9] Of course, it remains true that "retaliatory motivation" may be "difficult to prove in any individual case." North Carolina v. Pearce, 395 U. S., at 725 n. 20. And, this is certainly one of the reasons why the Court in Pearce adopted prophylactic rules. Similar problems of proof prompted the decisions in Miranda and Wade, but such problems in themselves were not sufficient to warrant retrospective application.
[10] We reiterate here what the Court has repeatedly said in retroactivity cases: "[W]e do not disparage a constitutional guarantee in any manner by declining to apply it retroactively." Johnson v. New Jersey, 384 U. S., at 728; cf. Linkletter v. Walker, 381 U. S. 618, 629 (1965).
[11] Compare Berger v. California, 393 U. S. 314 (1969), and Roberts v. Russell, 392 U. S. 293 (1968), with Adams v. Illinois, 405 U. S. 278 (1972), and Johnson v. New Jersey, supra, at 731.
[12] We need not disagree with MR. JUSTICE MARSHALL'S notation, post, at 66 n. 9, that the result in Pearce was foreshadowed, i. e., that higher sentences on retrial were being questioned. Our focus here, however, is on the prophylactic measure adopted to achieve that result. As to this, we do not think there is any serious question that neither the recordation requirement nor the limitations on matters to be considered were so clearly forecast as to render a contrary state reliance unjustifiable.
[13] See Note, Constitutional Law: Increased Sentence and Denial of Credit on Retrial Sustained under Traditional Waiver Theory, 1965 Duke L. J. 395, 399 n. 25 (informal survey of North Carolina courts showed that six of 50 reconvicted defendants received higher sentences).
[14] Thus, the retroactivity of Pearce would present difficulties not encountered in two of the Court's recent decisions holding retroactive cases involving resentencing: Furman v. Georgia, 408 U. S. 238 (1972) (the "death penalty" case); Robinson v. Neil, 409 U. S. 505 (1973) (holding Waller v. Florida, 397 U. S. 387 (1970) retroactive). In both cases, "[t]hat which was constitutionally invalid could be isolated and excised without requiring the State to begin the entire factfinding process anew." Robinson v. Neil, supra, at 510.
[15] Respondent, relying on Linkletter v. Walker, supra, and Tehan v. Shott, 382 U. S. 406 (1966), urges the Court to distinguish between cases, like his, on direct appeal and those arising after a conviction and sentence have become final. We think the above-stated reasons for applying Pearce prospectively apply with equal force to all cases in which resentencing proceedings occurred before June 23, 1969, the date of decision in Pearce. See Stovall v. Denno, 388 U. S., at 300; Desist v. United States, 394 U. S., at 252; Williams v. United States, 401 U. S., at 651-652.
[1] The State did present an affidavit from the sentencing judge in this case. the Michigan Supreme Court held that it did not satisfy the requirement of North Carolina v. Pearce, 395 U. S. 711, 726 (1969), that more sever sentences can be justified only by "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." See 386 Mich. 84, 97, 191 N. W. 2d 375, 381 (1971). Petitioner contends that this holding was erroneous. Petition for Writ of Certiorari 5-6. The Court does not address this contention, nor shall I.
[2] Since Payne's appeal was pending when Pearce was decided, I need not consider whether different considerations, such as the defendant's failure to raise the issue in seeking review from this Court or to persuade us on the merits, might suffice under the Due Process Clause to justify different treatment of defendants whose sentences had become final.
[3] Mr. Justice Harlan, dissenting in Fay v. Noia, 372 U. S. 391, 475 (1963), suggested that the possibility of an enhanced sentence after a successful appeal, according to the Court, precluded the State from relying on a failure to appeal as an adequate state ground supporting the denial of relief under federal habeas corpus. On his interpretation, then, Fay anticipated the holding in Pearce.
[4] In holding various rulings retroactive, this Court has given only the most cursory nod to the three-pronged test. See, e. g., Roberts v. Russell, 392 U. S. 293 (1968); McConnell v. Rhay, 393 U. S. 2 (1968); Arsenault v. Massachusetts, 393 U. S. 5 (1968).
[5] Linkletter v. Walker, 381 U. S. 618 (1965), giving a limited retroactive effect to Mapp v. Ohio, 367 U. S. 643 (1961), is an anomaly at odds with the Court's subsequent treatment of problems of retroactivity and can be explained only by the Court's unfamiliarity with those problems when the case was decided. See also Johnson v. New Jersey, 384 U. S. 719 (1966).
[6] For example, the sentencing judge, had he considered the case as an initial matter, might have imposed a sentence shorter than that imposed at the first trial, but, out of vindictiveness, he might decide to reimpose the original sentence. The procedures outlined in Pearce cannot prevent this.
[7] I assume that the Court's reliance on the continuing availability of the "foundational" right means that an offender who shows that vindictiveness played a part in his resentencing is entitled to relief. I would simply shift the burden of proof to the State, which has better access to the relevant facts.
[8] State courts, closer to the problems of administering the rule I suggest, have widely though that those burdens are not substantial. See, e. g., Stonom v. Wainwright, 235 So. 2d 545 (Fla. App. 1970); People v. Baze, 43 Ill. 2d 298, 253 N. E. 2d 392 (1969); State v. Pilcher, 171 N. W. 2d 251 (Iowa 1969); Hord v. Commonwealth, 450 S. W. 2d 530 (Ky. 1970); State v. Rentschler, 444 S. W. 2d 453 (Mo. 1969); Commonwealth v. Allen, 443 Pa. 96, 277 A. 2d 803 (1971); Denny v. State, 47 Wis. 2d 541, 178 N. W. 2d 38 (1970).
[9] The Court's conclusion that Pearce was not foreshadowed by decisions in this Court or by a trend of lower court decisions is somewhat misleading. This Court's decision in Green v. United States, 355 U. S. 184 (1957), raised substantial questions under the Double Jeopardy Clause of the constitutionality of enhanced sentences after a successful appeal. Also, one reading of Fay v. Noia, 372 U. S. 391 (1963), suggested by the dissent of Mr. Justice Harlan, is that a State may not burden the right to appeal with the possibility of an enhanced sentence. And prior to Pearce, the First, Second, Fourth, Fifth, and Seventh Circuits had held that enhanced sentences after reconviction could be justified only in limited circumstances. See Marano v. United States, 374 F. 2d 583 (CA1 1967); United States v. Coke, 404 F. 2d 836 (CA2 1968) (en banc); Patton v. North Carolina, 381 F. 2d 636 (CA4 1967); Simpson v. Rice, 396 F. 2d 499 (CA5 1968); United States v. White, 382 F. 2d 445 (CA7 1967). So had the California Supreme Court, in a powerful opinion by Justice Traynor. People v. Henderson, 60 Cal. 2d 482, 386 P. 2d 677 (1963). Finally, a "learned and effective article," as Judge Friendly called it in United States v. Coke, supra, arguing the same point, appeared in 1965. Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606 (1965). I would think that these decisions and commentary had prepared the ground rather well for Pearce, as the Court concedes, ante, at 56 n. 12. Yet if the result was foreshadowed, it is not unreasonable to require States now to supplement the record, so that it will be clear that unconstitutional sentences were not imposed. Because it insists on treating the issue here as a question of retroactivity, the Court does not address this argument.