THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHAEL MARINO, Respondent, *v.* J. LELAND CASSCLES, as Superintendent of Great Meadow Correctional Facility, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. RONALD MARSHALL, Respondent, *v.* J. LELAND CASSCLES, as Superintendent of Great Meadow Correctional Facility, Appellant.

Third Department, August 2, 1973.

*Louis J. Lefkowitz, Attorney-General* (*Frederick R. Walsh* and *Ruth Kessler Toch* of counsel), for appellant.

*David F. Kunz* for respondents.

HERLIHY, P. J. These are appeals from judgments of the Supreme Court at Special Term, entered November 8, 1972 in Washington County, which sustained writs of habeas corpus and released the relators and restored them to parole.

These appeals involve primarily the same basic question, whether the guidelines for parole revocation proceedings set forth by the United States Supreme Court in *Morrissey* v. *Brewer* (408 U. S. 471) are to be applied to situations where the violation of parole, arrest and declaration of delinquency occurred prior to June 29, 1972 (the date *Morrissey* was handed down) and the parole violation hearing was held subsequent thereto (during early August, 1972). The underlying crimes and alleged parole violations differ but the chronology of the parole violation process places the two relators in the same position as far as these appeals are concerned.

The relator Marshall was arrested on a detention warrant for parole violation on May 24, 1972. Marino was arrested on April 14, 1972 pursuant to a detention warrant for parole violation.

On July 19, 1972 identical notices of parole violation hearing were sent to the New York City Legal Aid Society, advising that parole violation hearings would be held two weeks later on August 3, 1972 at the Ossining Correctional Facility. In each instance a list of alleged violations contained in the report of violation of parole was attached to the notice of parole violations. The notices also requested advance notice of the names of any witnesses which the relators might call so that arrangements could be made for their entry into the correctional institution.

The report of violation of parole which was sent to the Legal Aid Society showed Marshall's delinquency date to be May 23, 1972. This was in accordance with the decision of Parole Board Commissioner, William J. Barnwell, who, on June 23, 1972, declared Marshall to be delinquent as of May 23, 1972. The report of violation of parole enumerated eight charges against Marshall together with a written description thereof. Subsequent to the issuance of the notice of parole violation hearing with its attached charges and prior to the revocation hearing, Marshall caused a notice of motion together with a petition seeking a writ of habeas corpus specifying that no preliminary inquiry had been held to be served. At the conclusion of the

hearing held on August 3, 1972, the Parole Board revoked his parole, finding that five of the eight charges against Marshall were sustained by the evidence presented.

The report of violation of parole which was sent to the Legal Aid Society in relation to Marino showed his delinquency date to be April 10, 1972 in accordance with the May 12, 1972 decision of Parole Board Commissioner Paul J. Regan. The report of violation of parole enumerated and gave a written description of four charges against Marino. Subsequent to the issuance of the notice of parole violation hearing with its attached charges and prior to the revocation hearing, Marino caused a notice of motion together with a petition seeking a writ of habeas corpus specifying that no preliminary inquiry had been held to be served. At the conclusion of the hearing held in August of 1972, the Parole Board found that three of the four charges against Marino were sustained by the evidence presented.

The Board of Parole has sustained its burden of proving that the evidence and facts satisfactorily demonstrate that a parole violation has occurred and that the violation warrants revocation of parole (cf. *People ex rel. Warren* v. *Mancusi,* 40 A D 2d 279). "Satisfactory evidence" is an acceptable standard of proof in parole revocation hearings (cf *Arciniega* v. *Freeman,* 404 U. S. 4). Moreover, the propriety of the action taken by the Board of Parole at the hearings held is not directly in issue as the court below based its decision on the conclusion that *Morrissey* was to be retroactively applied and mandated preliminary hearings which had not been provided. The test to ascertain whether more recent constitutional protection in the area of criminal procedure is to be applied retroactively has been firmly established. (See *Michigan* v. *Payne,* 412 U. S. 47 [May 21, 1973]; *Stovall* v. *Denno,* 388 U. S. 293, 297; *Johnson* v. *New Jersey,* 384 U. S. 719, 726–727; *Tehan* v. *Shott,* 382 U. S. 406, 410–418; *Linkletter* v. *Walker,* 381 U. S. 618, 629, 636.)

Pursuant to the motions made by the relators prior to the revocation hearings, writs were issued on August 11 and August 14, 1972 which was after the revocation hearings.

On October 30, 1972 hearings were held at a Special Term of Supreme Court, Washington County, at which the relators were represented by counsel and personally testified. The court below sustained the writs to the extent of directing relators' release and restoration to parole on the same terms as existed at the time they were arrested as parole violators. The court based its decision upon an application of *Morrissey* v. *Brewer* (*supra*)

to the facts of each of the instant cases. The court's basic analysis is set forth in *Marshall* and followed in *Marino*. "Even though *Morrissey* v. *Brewer* was not decided until the 29th of June of this year, which was subsequent to the day you say this man was arrested as parole violator, *Morrissey* v. *Brewer* has been held to be retroactive in * * * (*People ex rel. Van Burkett* v. *Montanye*, 70 Misc 2d 907), so that is applicable in this case, that is *Morrissey* is ".

In *Morrissey* v. *Brewer* (*supra*, p. 385) the court mandated that the first step after arrest be a preliminary hearing:

"Due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and *as promptly as convenient after arrest while information is fresh and sources are available.* Cf. *Hyser* v. *Reed,* 115 U. S. App. D. C. 254, 318 F. 2d 225 (1963). Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions." (Emphasis added.)

The second step required is a formal revocation hearing (p. 488): "The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody."

The court concluded its opinion by setting forth the minimum requirements of due process at the revocation hearing (p. 489):

"(a) written notice of the claimed violations of parole;

"(b) disclosure to the parolee of evidence against him;

"(c) opportunity to be heard in person and to present witnesses and documentary evidence;

"(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

"(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

"(f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking parole.

"We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in any adversary criminal trial."

As noted hereinabove, *Morrissey* was handed down on June 29, 1972, which was subsequent to the detention of the relators for violation of parole and declaration of delinquency but prior to the notification of charges and hearings.

In the case of *People ex rel. Calloway* v. *Skinner* (33 N Y 2d 23 [July 3, 1973]), the Court of Appeals has held that where the declaration of delinquency occurs prior to June 29, 1972 (the effective date of *Morrissey* v. *Brewer, supra*) *Morrissey* is inapplicable. Accordingly, the provision of *Morrissey* as to a preliminary hearing is inapplicable to the present cases.

In *Matter of Richardson* v. *New York State Bd. of Parole* (41 A D 2d 179, affd. 33 N Y 2d 23 [July 3, 1973]) the First Department had before it a case in which the timing of the determination in *Morrissey* and the procedural steps were substantially the same as in the present case. In *Richardson* the court held that under such circumstances the failure to hold a preliminary hearing would not require an annulment of the final hearing. I agree, but, unlike *Richardson*, the final revocation hearing proceedings are before us for review. Applying the principle of *Morrissey* in regard to due process to the revocation hearing and the determination of the board revoking parole, there was no violation of due process; in both cases the relators were represented by counsel and the record establishes that they had opportunity to adduce such evidence and testimony as they deemed relevant; and the relators made such admissions as would establish that the revocation of parole was neither arbitrary nor capricious.

The judgments should be reversed, on the law and the facts, and the writs dismissed, without costs.

STALEY, JR., GREENBLOTT, COOKE and REYNOLDS, JJ., concur.

Judgments reversed, on the law and the facts, and writs dismissed, without costs.