**Harry Lee WILLIAMS, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, and C. V. Kern, Sheriff, Respondents-Appellees.**

No. 73-3854.

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1974.

Ben Aderholt, Houston, Tex. (Court-appointed), for petitioner-appellant.

Joe Moss, Asst. Dist. Atty., Houston, Tex., for C. V. Kern.

Dunklin Sullivan, Sarah Shirley, Asst. Attys. Gen., Austin, Tex., for W. J. Estelle.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Petitioner Harry Lee Williams appeals from denial of habeas corpus by the district court. He was convicted of assault with intent to kill with malice aforethought in a Texas state court in November 1970. The principal contention in this proceeding is that petitioner's right to due process of law was violated when he was compelled to wear a prison uniform [1] at his jury trial,[2] despite his request for his readily available civilian clothes. We reverse and remand for a new trial.

## I. The Due Process Implications of Trial in Prison Garb

In Brooks v. Texas, 5 Cir., 1967, 381 F.2d 619, 624, this Court characterized trial in prison garb as "inherently unfair." Four years later, in Hernandez v. Beto, 5 Cir., 1971, 443 F.2d 634, we reaffirmed this language in *Brooks* and held the practice to be constitutional error—an impingement upon the presumption of innocence.[3] We added, however,

---

1. It is undisputed that Williams' clothing was immediately recognizable as prison garb. *Cf.* United States v. Whitaker, 10 Cir., 1970, 435 F.2d 1300; Klinger v. Erickson, D.S.D., 1971, 328 F.Supp. 674.

2. *Cf.* United States v. Social Services Dep't, E.D.Pa., 1967, 263 F.Supp. 971, 975 (bench trial in prison garb held nonprejudicial).

3. Three other circuits have passed on this question. The Tenth Circuit has held that trial in prison garb is not *inherently* prejudicial, but has overturned one conviction because of the taint created by the practice. Anderson v. Watt, 10 Cir., 1973, 475 F.2d 881. *Cf.* Watt v. Page, 10 Cir., 1972, 452 F.2d 1174; McFalls v. Peyton, W.D.Va., 1967, 270 F.Supp. 577. The Ninth and Third Circuits have followed *Hernandez*. Bentley v. Crist, 9th Cir., 1972, 469 F.2d 854; Gaito v. Brierley, 3 Cir., 1973, 485 F. 2d 86. A number of state courts have also

that "[a] defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." 443 F.2d at 637.

■■ Waiver of the objection cannot be inferred merely from failure to object if trial in prison garb is customary in the jurisdiction. It must be shown that the practice was not customary and might not be insisted upon if objected to, or that the defendant hoped to elicit sympathy by his appearance in such clothing. See Hernandez v. Beto, supra, 443 F.2d at 636–637; Hollins v. Beto, 5 Cir. 1972, 467 F.2d 951, 952; Goodspeed v. Beto, 5 Cir., 1972, 460 F.2d 398, 400. In the present case, as in Hernandez, the practice was customary, and there was no evidence that counsel used Williams' appearance to evoke sympathy from the jury. Therefore, the district court correctly found there was no waiver, though no formal objection to prison garb was made by Williams' counsel at trial. 364 F.Supp. at 343.

## II. Retroactive Application of Hernandez

Williams' trial occurred before our decision in Hernandez, and so we must determine whether Hernandez is to be applied retroactively.[4] In recent years the courts have abandoned the traditional practice of automatically giving retroactive effect to judicial decisions. See Norton v. County of Shelby, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court consulted three criteria in holding that Mapp v. Ohio, 367 U.S.

643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applying the Fourth Amendment exclusionary rule to the states) was not to apply retroactively: (1) the purpose of the newly announced rule; (2) the extent of reliance on the old rule by law enforcement officials; and (3) the probable effect of retroactive application on the administration of justice. See also Pruett v. State of Texas, 5 Cir., 1973, 470 F.2d 1182, 1184.

■ If a new rule serves a broad social policy—such as deterrence of unconstitutional actions by law enforcement officials—the courts have been reluctant to invoke retroactivity. See Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, supra; Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Lyon v. United States, 5 Cir., 1969, 416 F.2d 91; Monroe v. United States, 5 Cir., 1970, 435 F.2d 160. On the other hand, rules designed to enhance the reliability of determinations of guilt or innocence are usually applied retroactively. See Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Eskridge v. Washington State Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); McConnell

---

found trial in prison garb to be constitutional error. Commonwealth v. Keeler, 216 Pa. Super. 193, 264 A.2d 407 (1970); Miller v. State, 249 Ark. 3, 457 S.W.2d 848 (1970); People v. Shaw, 381 Mich. 467, 164 N.W.2d 7 (1969); People v. Zapata, 220 Cal.App.2d 903, 34 Cal.Rptr. 171 (1963); Eaddy v. People, 115 Colo. 488, 174 P.2d 717 (1946); Collins v. State, 70 Okl.Cr. 340, 106 P.2d 273 (1940); Shultz v. State, 131 Fla. 757, 179 So. 764 (1934).

4. We find no discussion in any decision on the question whether this rule should be applied retroactively. Both the Ninth and Third Circuits, however, have given the rule retroactive effect, Bentley v. Crist, supra; Gaito v. Brierley, supra, by announcing it in a habeas appeal. See Jackson v. Denno, infra; Stovall v. Denno, infra, 388 U.S. at 298, 87 S.Ct. at 1970. A district court in the Fifth Circuit has also applied the rule retroactively via habeas corpus. Dennis v. Dees, E.D.La., 1968, 278 F.Supp. 354.

v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L. Ed.2d 2 (1968); Smith v. State of Texas, 5 Cir., 1968, 395 F.2d 958.

■ This criterion is not an automatic guide to whether retroactivity is justified. "[T]he question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree." Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966); Adams v. Illinois, 405 U.S. 278, 281, 92 S.Ct. 916, 918, 31 L.Ed.2d 202 (1972); Gosa v. Mayden, 413 U.S. 665, 680, 93 S.Ct. 2926, 2936, 37 L.Ed.3d 873 (1973); Michigan v. Payne, 412 U.S. 47, 55, 93 S.Ct. 1966, 1970, 36 L.Ed.2d 736 (1973); Bassett v. Smith, 5 Cir., 1972, 464 F.2d 347, 349. The "certainty and frequency" of the prejudice the new rule is designed to eliminate are important determinants of the appropriateness of retroactivity. Stovall v. Denno, 388 U.S. 293, 299, 87 S.Ct. 1967, 1971, 18 L.Ed.2d 1199 (1967); Juelich v. United States, 5 Cir., 1968, 403 F.2d 523. *See* DeStefano v. Woods, 392 U.S. 631, 634, 88 S.Ct. 2093, 2095, 20 L.Ed.2d 1308 (1968).

In the present case, the purpose of the new rule unquestionably is to enhance the reliability of the fact-finding process. Nothing could be more subversive of that process than a practice that compromises the presumption of innocence. Nor need we speculate about the certainty and frequency of the prejudice associated with this error.

■ In Brooks v. Texas, *supra*, we declared trial in prison garb to be "inherently unfair." This conclusion is consistent with the view that whether a practice is, in a legal sense, prejudicial must be determined in light of both the individual's interest in an accurate determination of guilt or innocence and the state's interest in an efficient criminal justice system unburdened by excessive delay or complication.

For example, physical restraints on a defendant are permissible only when necessary to prevent injury to bystanders, escape, or disorder at trial. Odell v. Hudspeth, 10 Cir., 1951, 189 F.2d 300, 302. Like trial in prison garb, this practice adversely affects the accuracy of the fact-finding process, because it may prejudice the jury against the defendant. Odell v. Hudspeth, *supra*, 189 F.2d at 302. The use of restraints is not "inherently unfair," however, because the adverse effect may be an unavoidable consequence of protecting an important state interest—such as safety in the courtroom. Therefore, the defendant must show that the practice was prejudicial in his case—that is, was not necessary to protect an important state interest. *See* Gregory v. United States, 8 Cir., 1966, 365 F.2d 203, 205; Way v. United States, 10. Cir., 1960, 285 F.2d 253, 254; Hardin v. Estelle, W.D.Tex., 1973, 365 F.Supp. 39, 46–47. *See generally* Lane v. Warden, 4 Cir., 1963, 320 F.2d 179, 186.

■ Trial in prison garb, in contrast to use of physical restraints, does not serve a legitimate state interest. The state has advanced no reason for denying a defendant's request for his available civilian clothes. The certainty and frequency of the prejudice need not be measured. The practice in question is also prejudicial because it is unnecessary.[5] Thus the purpose of the rule announced in *Hernandez* strongly supports retroactivity.

The second factor—the extent of reliance by law enforcement officials—also points toward retroactivity. In almost every case in which the Supreme Court has refused to apply constitutional rules of criminal procedure retroactively, the new rule was announced in a case over-

---

5. In this case, as in *Hernandez*, the defendant was presented in prison clothes because he failed to post bond. A different result may be appropriate where the defendant is on trial for an offense allegedly committed while he was in prison, because the jury would learn of his incarceration in any event.

ruling clear, well-established precedent. *See* Williams v. United States, *supra,* 401 U.S. at 648, 91 S.Ct. at 1150; Desist v. United States, *supra,* 394 U.S. at 250, 89 S.Ct. at 1034; DeStefano v. Woods, *supra,* 392 U.S. at 634, 88 S.Ct. at 2095; Stovall v. Denno, *supra,* 388 U.S. at 299, 87 S.Ct. at 1971; Johnson v. New Jersey, *supra,* 384 U.S. at 731, 86 S.Ct. at 1780; Tehan v. Shott, *supra,* 382 U.S. at 411, 86 S.Ct. at 462; Linkletter v. Walker, *supra,* 381 U.S. at 630, 85 S.Ct. at 1738; Pruett v. State of Texas, *supra,* 470 F.2d at 1184. The Court has never refused retroactive application where the condemned practice had not received at least substantial support from prior rulings. *See* Adams v. Illinois, 405 U.S. 278, 283–284, 92 S.Ct. 916, 920, 31 L.Ed.2d 202 (1972); Gosa v. Mayden, 413 U.S. 665, 682, 93 S.Ct. 2926, 2932, 37 L.Ed.2d 873 (1973) (plurality opinion); Michigan v. Payne, 412 U.S. 47, 56, 93 S.Ct. 1966, 1971, 36 L. Ed.2d 736 (1973). Reliance on a blank slate is not enough. *But see* Bassett v. Smith, 5 Cir., 1972, 464 F.2d 347, 351. Even where the condemned practice has found support in lower court decisions or Supreme Court dicta, new rules have been applied retroactively if their effect on trial accuracy is substantial and they do not greatly burden the administration of justice. *See* Witherspoon v. Illinois, *supra,* 391 U.S. at 523 n. 22, 88 S.Ct. at 1777; Roberts v. Russell, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968). *See generally* Robinson v. Neil, 409 U.S. 505, 510, 93 S.Ct. 876, 879, 35 L.Ed.2d 29 (1973).

Addressing the question of retroactivity in a more general context, the Supreme Court has concluded that to be applied prospectively only, a decision must "establish a new principle of law either by overruling clear past precedent on which litigants may have relied . . . [citations omitted] or by deciding an issue of first impression whose resolution was not clearly foreshadowed. . . ." [Citations omitted.] Chevron Oil Co. v. Huson, 404 U. S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Even by this stricter standard, the case for retroactivity is strong. *Hernandez* overruled no precedents—clear or otherwise—and was unmistakably foreshadowed in Brooks v. Texas, *supra. See* Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

■ The third factor, the effect retroactively might have on the administration of justice, was ably analyzed by the district court. Each case of trial in prison garb is to be evaluated on its own facts, Hollins v. Beto, *supra,* 467 F.2d at 952,[6] and in habeas proceedings the petitioner bears the burden of proving the error occurred. Swain v. Alabama, 380 U.S. 202, 226–227, 85 S.Ct. 824, 839–840, 13 L.Ed.2d 759 (1965); Richardson v. State of Texas, 5 Cir., 1970, 425 F.2d 1372, 1373; Scott v. Walker, 5 Cir., 1966, 358 F.2d 561, 571. The number of new trials made necessary by the new rule must also be evaluated in light of the standard by which the error of presenting a defendant in prison garb is to be reviewed, as announced in Hernandez v. Beto, *supra*:

> Before "a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt." [quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967)].

Such a belief is warranted if the reviewing court finds overwhelming evidence in support of the verdict. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728–1729, 23 L.Ed.2d 284 (1969).

### III. Whether the Error Was Harmless

■ The jury could have found petitioner (1) not guilty, (2) guilty of assault with intent to kill with malice

---

**6.** Since *Hernandez,* the district courts have not been hesitant to deny habeas petitions based on trial in prison garb where the evidence of guilt satisfied the harmless error test. *See, e. g.,* Bates v. Estelle, S.D.Tex., 1973, 360 F.Supp. 1278.

aforethought, or (3) guilty of assault with intent to kill without malice. We find the evidence of malice aforethought and of intent to kill insufficient to sustain the conviction under the standard promulgated in *Chapman* and *Harrington, supra.*

The record shows that petitioner Williams went to an apartment owned by his former landlord, Ray Neatherlin, intending to visit Kay Tolley, a tenant he had known there. The occupants of a neighboring apartment told Williams that Tolley was at Neatherlin's apartment, and he said he would wait with them for her to return. The circumstances of his arrival thus do not suggest any malice or intent to kill on petitioner's part at that point. Indeed, he appears to have tried to avoid any confrontation with Neatherlin by not going to his apartment.

The only evidence of any hostility between Williams and Neatherlin was the unelaborated hearsay statement of Kay Tolley, testified to by Neatherlin, that Williams had come there to cause trouble.

Neatherlin accompanied Kay Tolley to her apartment after asking Bill Stacy, a friend living in the neighboring apartment, to come along. Stacy picked up a pistol and joined the other two. When the three arrived, Williams, who had been chatting with the neighbors on their front porch, approached them. He said hello to Kay Tolley, and Neatherlin demanded compensation for some bad checks allegedly tendered as payment of rent Williams allegedly owed from his prior tenancy. Williams stated he owed nothing, and Neatherlin then demanded he pay the cost of cleaning up the apartment he had occupied, which Neatherlin claimed had been filthy. Williams refused, and Neatherlin ordered him off the property at once.

At this point there was no indication that Williams was about to participate in an affray. One witness testified he looked angry, and there was some indication he approached Tolley and Neath-

erlin with his hand cupped, perhaps as if holding a knife. No one saw the knife, however, until the very end of the fight. Therefore, if malice and intent to kill are to be inferred, they can be inferred only from the circumstances of the fight.

Williams faced a heavier opponent who was accompanied by an armed ally. Although Stacy testified the pistol was stuck in the back of his trousers, Williams testified at the federal habeas hearing that it was in Stacy's front pocket and clearly visible to him. The fight itself lasted about three minutes. Neither man pressed an advantage. Each time Williams was knocked down, Neatherlin, who never left his feet during the fight, waited for him to get back up. At trial Neatherlin referred to the incident as a "little run-in."

Several plausible theories may explain Williams' assault on Neatherlin: fear that Neatherlin and Stacy would resort to physical force to collect Neatherlin's debt claim; anger at being accused of passing bad checks (Williams was not the maker of the checks) and accused of being filthy, and at being ordered to leave, embarrassed before his friends. However, a malicious intent to kill is also a plausible explanation for the assault—perhaps even the most plausible one. The evidence for that explanation is not so overwhelming that we can hold harmless the error of trying Williams in prison garb.

Another source of evidence of malice and intent to kill is the extent of Neatherlin's injuries. The principal testimony on this question was Neatherlin's self-serving statements and a remark by the arresting officer, who arrived on the scene a few minutes after the fight ended and testified that Neatherlin had "several lacerations." No medical records or physicians' reports were introduced. Neatherlin himself claimed he had received a stab wound in the chest as deep as the length of the knife blade itself (several inches), several foot-long gashes, and a stomach wound so serious

that his intestines were hanging out. Yet he admitted he did not even know he had been cut until Stacy yelled that Williams had a knife and stepped in to stop the fight.

Our view of the evidence bears comparison with the facts in Hernandez v. Beto, *supra*. In that case the pivotal question was whether the defendant was intoxicated. Although three policemen, three children, and an adult testified that they could smell alcohol on the defendant, that he staggered, and that his eyes were blurred and misty, the Court concluded the evidence was insufficient to render harmless the error of trying the defendant in prison garb. *Cf.* Thomas v. Beto, 5 Cir., 1973, 474 F.2d 981, 983, with Smith v. Estelle, 5 Cir., 1974, 498 F.2d 631. The evidence in this case is not so strong as to warrant the conclusion that the constitutional error of trying Williams in prison garb was harmless.

The cause is remanded with directions to grant the writ of habeas corpus and to discharge petitioner, unless the State elects to retry him within a reasonable time.

Reversed and remanded.