Johnnie Lee BROOKS, Petitioner,

v.

Donald W. WYRICK, Warden, etc., Respondent.

No. 79–436C(B).

United States District Court, E. D. Missouri, E. D.

June 15, 1979.

Johnnie Lee Brooks, pro se.

Kristie Green, Asst. Atty. Gen. of Mo., Jefferson City, Mo., for respondent.

## MEMORANDUM

REGAN, District Judge.

At his third trial, petitioner, a recidivist, was convicted in the Circuit Court of the City of St. Louis of the crime of robbery in the first degree. On June 12, 1975, he was sentenced by the Court under the Second Offender Act of Missouri to a term of 55 years imprisonment. On appeal to the Missouri Court of Appeals, St. Louis District, the conviction was affirmed in a lengthy opinion written by Chief Judge Simeone. *State v. Brooks*, Mo.App.1977, 551 S.W.2d 634. After futile attempts to obtain a

transfer to the Missouri Supreme Court and certiorari to the United States Supreme Court, this petition for a writ of habeas corpus was filed. No other post-conviction relief has been sought, on the premise that by his appeal petitioner sufficiently exhausted his state court remedies as to the claims here made.

Pursuant to our order to show cause, respondent has filed copies of the pertinent state court transcripts as well as the briefs of the parties in the state appellate court.

By a three-count indictment petitioner, as a prior offender, was charged in November, 1971, with the offense of assault with intent to maim with malice and with robbery in the first degree. After the introduction of all the evidence was concluded, the State entered a nolle prosequi as to the assault charge, so that only the robbery count was submitted to the jury. The case arose out of the September, 1971 robbery of a 17 year old baby sitter, Wilma Chestnut, in connection with which petitioner allegedly slashed her eyes blinding her allegedly to prevent her from being able to identify him as one of the robbers.

At petitioner's first trial (in 1972) he was convicted on both the assault and robbery counts and was sentenced to 55 years on the assault charge and 15 years on the robbery charge, the sentences to run concurrently. A new trial on both counts was ordered by the Missouri Court of Appeals (*State v. Brooks*, Mo.App.1973, 513 S.W.2d 168) in large part because the State had failed to disclose to petitioner that promises of immunity or leniency had been made to induce a participant in the crimes (an Earl Harper) to testify on behalf of the State. A second trial, held in 1974, ended in a mistrial on petitioner's motion because Harper (who had theretofore received a very light sentence) exercised his Fifth Amendment rights after the State in its opening statement had outlined in detail the testimony he was expected to give. At that time, another participant in the robbery (Ernest Craine) who had not been apprehended until June, 1974 (in the interim having departed for California where he lived for a time

under an assumed name), testified to crucial facts incriminating petitioner. He was cross-examined at length by petitioner's experienced counsel. In addition, his deposition had been taken on petitioner's behalf prior to that trial.

So much by way of background. Prior to petitioner's third trial which began April 21, 1975, Craine had pleaded guilty to robbery and received a sentence of 12 years' imprisonment. When called as a witness for the State, he invoked his privilege against self-incrimination and refused to testify except to admit that he had pleaded guilty to the robbery of Miss Chestnut and was serving the sentence imposed upon him for that offense. The trial court sustained Craine's claim of privilege because of the possibility that his testimony might incriminate him with respect to the blinding assault upon Miss Chestnut, and excused him from testifying. The court then permitted the State, over strenuous objection by petitioner's counsel, to read to the jury a transcript of Craine's testimony given at the 1974 trial.

Petitioner asserts, as his first ground for relief, that by allowing the transcript to be read to the jury the State court denied him various constitutional rights, in particular, his Sixth Amendment right of confrontation. This claim was considered at length and denied by the State appellate court (551 S.W.2d 648–654). We agree with the result there reached.

The right of an accused to be confronted with the witnesses against him is explicitly guaranteed by the Sixth Amendment. Clearly, this right of confrontation is an essential and fundamental requirement for a fair trial. *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). And, as *Pointer* held, the Confrontation Clause is made applicable to state court criminal proceedings by the Fourteenth Amendment.

Basic to the right of confrontation is an adequate opportunity for cross-examination. *Pointer v. Texas*, supra; *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Davis v. Alas-*

*ka*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The state court record in this case clearly demonstrates that petitioner not only was afforded the right to cross-examine Craine at the previous aborted trial, but that in the course of exercising this) right he fully explored every matter which could have had any bearing upon Craine's credibility, including the possibility that the witness had been promised, or had received, some consideration for his testimony. It is well settled that where the right of cross-examination of a witness who is unavailable has initially been afforded to the defendant at the previous judicial proceeding, the confrontation requirement is satisfied. *Barber v. Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968).

█ The remaining question on this issue is whether Craine was "unavailable," thereby rendering his testimony at the prior trial admissible as an exception to the physical confrontation requirement of the Constitution. True, not only was Craine alive and free of then-existing physical or mental illness or infirmity, but he was also physically present at the trial and was called to the witness stand. However, it is now well settled that where the witness properly invokes his Fifth Amendment right against self-incrimination, he is "unavailable." See *Phillips v. Wyrick*, 8 Cir. 1977, 558 F.2d 489, 494, holding that "(t)estimony from a witness who has claimed a privilege is for all practical purposes just as inaccessible as if he were dead or out of the jurisdiction of the court." In so ruling, *Phillips* cited the comment of the Supreme Court in *California v. Green*, 399 U.S. 149, 167–168, 90 S.Ct. 1930, 1940, 26 L.Ed.2d 489, that once the state made a good faith effort to introduce evidence through the live testimony of a witness "whether [the witness] claimed a loss of memory, *claimed his privilege against compulsory self-incrimination, or simply refused to answer*, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against [the defendant]." See also *Mason v. United States*, 10 Cir. 1969, 408 F.2d 903, and *United States v. Mobley*, 5 Cir. 1970, 421 F.2d 345.

█ We agree with the State courts' conclusion that Craine properly invoked his constitutional privilege against self-incrimination. There was a substantial basis upon which the trial court could find (as it did) that the crime of robbery had been completed prior to the blinding assault, so that *such* assault was not an element of the robbery, with the result that the danger of prosecution of Craine for *that* assault was a real one. See *State v. Collett*, Mo.App.1975, 526 S.W.2d 920, 922. Petitioner's counsel correctly so appraised the evidence at pp. 17–18 of his state court Brief:

"At the point where the stereo and speakers were removed from the apartment the robbery was complete. The [necessary] element of force or violence had been met by the grabbing of the neck and choking of Miss Chestnut which preceded the removal of the items. The state had to prove no additional elements in order to meet its burden under [the robbery count] of the indictment. There is absolutely no testimony that the blinding of Miss Chestnut, the subject of [the assault count] was in any way connected with the above described choking incident. Likewise, there is no testimony that the assault resulting in the blinding occurred prior to or concurrent with the robbery. Consequently, the assault . . . was a crime separate and apart from the elements necessary to prove the robbery . . . ."

Again, at page 28 of his Brief, the statement is made:

"It is the [petitioner's] position that the blinding assault . . . is a separate crime which occurred subsequent to the completion of the robbery."

And even though only petitioner may have perpetrated the actual blinding assault (as Craine had testified at the second trial and as Harper had testified at the first trial), Craine could nevertheless be found guilty as an accomplice. See *State v. Brooks*, supra, 513 S.W.2d l.c. 175. It follows that although there was no longer any potential incrimination as to the offense of robbing Miss Chestnut, the Fifth Amend-

ment privilege nevertheless remained available to Craine in this case because of the substantial risk that his testimony might incriminate him as to the assault upon her.[1]

Petitioner's remaining contentions[2] relate to the length of his sentence. As noted supra, following his conviction at the first trial in 1972, petitioner was sentenced to a term of 55 years imprisonment on the assault count and a term of 15 years imprisonment on the robbery count, the sentences to run concurrently, so that petitioner's total sentence was a 55 year term. The sentence imposed after the last trial was 55 years. Relying upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), petitioner argues in this Court, as he did in the State courts, that the Court was precluded from assessing his punishment for the robbery at a longer term than 15 years, the State having entered a nolle prosequi as to the assault charge.

*Pearce* held that neither the double jeopardy provision nor the Equal Protection Clause of the constitution constitute an absolute bar to a more severe sentence upon reconviction, but that due process of law requires not only that vindictiveness against a defendant (for having successfully attacked his first conviction) play no part in the sentence he receives after a new trial, but that the defendant be freed of apprehension of a retaliatory motivation on the part of the sentencing judge. In our judg-ment *Pearce* does not mandate a finding for petitioner.

Petitioner's original conviction was reversed (1) because the Court of Appeals found that he had been denied due process by reason of the intentional failure of the prosecution to disclose that Harper had been proffered a favorable disposition of the charges against him in return for testifying against petitioner, and (2) because the trial court refused to give an accomplice instruction with respect to Harper. These errors were of such a nature that it would have been impossible for the Court to have reversed the robbery charged without at the same time reversing the assault charge (and vice versa). Whatever may have been the prejudicial effect of these errors, it pertained to the *entire* case, and not simply to the assault charge. The result is that what was reversed was the *total* sentence of 55 years, solely because of error permeating the *entire* sentence.

In ruling petitioner's direct appeal, Judge Simeone correctly stated:

"The whole thrust of the *Pearce* prophylactic rule is to ensure that (1) vindictiveness plays no part in a judicial resentencing process, (2) the resentencing decision will not be based upon improper considerations such as the unarticulated resentment of the sentencing judge, (3) the State does not exercise "naked power" to impose a more severe sentence, and (4)

---

1. We also note that Missouri has a constitutional provision guaranteeing a privilege against self-incrimination similar to that of the Fifth Amendment. Article I, Section 19, Constitution of Missouri. And although the term "Fifth Amendment" was loosely used by both Court and counsel in referring to the privilege against self-incrimination, the fact is that Craine's claim of privilege, when made, was not limited to the federal constitution. Obviously, the decision of the State Court of Appeals sustaining the claim of privilege was warranted under Missouri cases construing Article I, Section 19 of the State constitution. See, e. g., *State ex rel. Howard v. Allison*, Mo.App. 1968, 431 S.W.2d 233.

2. Although petitioner used the Model form annexed to the Rules Governing Section 2254 cases, he did not follow the explicit directions in Paragraph 12 of the Form requiring him to state *concisely* each ground of his claim and summarize *briefly* the *facts* supporting each such ground. Typical of his format is the following:

"A. Ground one: See Appendix A, attached hereto.
Supporting FACTS: Transcript of trial, Petitioner, Norman London."
(The transcript is over 1,000 pages. Mr. London was petitioner's attorney at the trial and on appeal).
Appendix A has a closely typed three page "Statement of the Case" followed by a page and a half of "Petitioner's Contentions" in narrative fashion. We have seined through the Appendix in light of the Brief filed in his State court appeal to search out the alleged constitutional violations of which he now complains which were ruled adversely to petitioner by the State courts.

the defendant's rights of appeal are not chilled. *Pearce* and its progeny are not dispositive of the sentence imposed here by the trial judge."

In subsequent decisions, the Supreme Court has declined to extend *Pearce* beyond the factual situations therein. Thus, in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court held that in a state having a two-tier system, *Pearce* had no application to a harsher sentence imposed upon a trial de novo in a court of general jurisdiction from a conviction in an inferior court, even though the superior court judge was aware of the penalty assessed by the inferior court. In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Court held that the assessment of a higher sentence by a jury on the retrial does not offend the Due Process Clause as long as the jury is not informed of the prior sentence and there is no showing of vindictiveness. And in *Michigan v. Payne*, 412 U.S. 47, 51–52, 93 S.Ct. 1966, 1969, 36 L.Ed.2d 736 (1973), in holding that the *Pearce* prophylactic rules was not retroactive, the Court emphasized that its purpose was simply "to ensure that resentencing decisions will not be based on improper considerations such as a judge's unarticulated resentment at having been reversed on appeal, or his subjective institutional interest in discouraging meritless appeals."

The decision invalidating the sentences of Pearce and Rice must be read in light of the factual situations therein. Pearce's case involved a conviction on a single charge for which, on the first trial, he had been sentenced to a term of 12 to 15 years. On retrial, taking into account the time he had already spent in prison, he was sentenced "to a longer *total* sentence than originally imposed." In *Simpson v. Rice*, 5 Cir. 1968, 396 F.2d 499, decided in the *Pearce* opinion, Rice had been sentenced to prison terms *aggregating* 10 years on four separate (*unrelated*) charges of burglary. On retrial, he was sentenced to prison terms *aggregating* 25 years on three of the charges, the fourth having been dropped by the prosecution. Thus, in both cases, the defendant

was subsequently sentenced to a longer term of imprisonment than he would have served but for his successful appeal.

■ In the present case, the sentence on retrial did not exceed the aggregate total of the original sentence, and in our judgment did not constitute a harsher sentence under the circumstances. The assault and robbery (although technically separate offenses) were interrelated, the blinding assault having been committed within minutes after the robbery offense was complete and for the sole purpose of preventing the victim from being able to identify petitioner as the guilty party. It is evident that Judge Palumbo believed that an aggregate sentence of 55 years should be imposed for the totality of petitioner's conduct in connection with the robbery and that he limited the *concurrent* sentence for the robbery to only 15 years because he had already taken into account the evidence as to petitioner's assaultive behavior.

This is not a case in which the charges for which the 1972 sentences were imposed were separate and unrelated. And it is not a case in which the assault conviction was reversed because the evidence was insufficient or even for other error not directly affecting the robbery charge. Nor is it a case in which petitioner had been acquitted of the assault count by the jury. The situation here is no different than it would have been had Judge Palumbo on his own motion or even pursuant to a motion for new trial set aside the original conviction by reason of the prejudicial errors permeating the entire case, thereby obviating the necessity for any appeal. We are convinced on the record in this case that the fact petitioner successfully appealed his conviction is wholly extraneous to the issue of whether the final sentence was violative of the Due Process Clause.

The problem with which we are confronted arose solely because the prosecution entered a nolle prosequi as to the assault count at the close of the evidence, under the mistaken belief that under the then recent decision in *State v. Neal*, Mo., 1974, 514

S.W.2d 544, there was only a single offense, thereby precluding the state from prosecuting petitioner for both.[3] The State's action in dropping the assault count as a separate offense was wholly unrelated to petitioner's successful appeal of his original conviction, so that the element of resentment against petitioner exercising his right of appeal is clearly absent. When the assault count was voluntarily dropped by the State, the evidence pertaining thereto remained, inasmuch as it was relevant and admissible on the robbery charge. As the Missouri Court of Appeals held on petitioner's appeal, "since the punishment imposed in the 1972 and 1975 trials was based upon the totality of the evidence in each trial, the sentence imposed (in the later trial) which did not exceed the punishment imposed in the 1972 trial was not 'more severe' as the term is used in *Pearce*."

Also of importance here is the fact that the third trial was before a different judge (Satz) than the judge who sentenced petitioner in 1972 (Palumbo).[4] Hence, the sentencing judge (who was not the judge reversed on appeal), had "no personal stake in the prior conviction and no motivation to engage in self-vindication." *Chaffin v. Stynchcombe*, supra, 412 U.S. at 27, 93 S.Ct. at 1983.

The record in this case clearly negates any improper motivations on the part of Judge Satz. He obviously (and conscientiously) recognized the constraints imposed by *Pearce* in determining that a sentence of 55 years was commensurate with the evidence and the offense of which petitioner was found guilty and was not "more severe" than the 1972 sentence. Petitioner's claim, in effect, is not that he is being punished for having successfully appealed his original conviction, but that he be rewarded for the mistake of the prosecutor in entering the nol pros as to the assault charge.

By way of brief summary: We have concluded, therefore, that *Pearce* has no application to the facts of this case, not only because the sentence imposed upon petitioner was not longer than the first sentence within the rationale of *Pearce*, but because the facts herein conclusively demonstrate the absence of any vindictiveness or retaliatory motivation against petitioner for having successfully attacked his first conviction. Petitioner's appeal and the result thereof played no part whatever in the ultimate sentencing. Rather, it was the nol pros by the prosecutor which was entered under a mistaken construction of the law which gave rise to petitioner's claim. And since *Pearce* expressly holds that there is no absolute constitutional bar to imposing a more severe sentence on reconviction absent vindictiveness against the defendant for having successfully attacked his first sentence, it follows that under any view of the facts, petitioner was not denied due process of law.

An evidentiary hearing is not required. The issues are solely legal ones based on the trial record. It was on this trial record that the Missouri Court of Appeals ruled these issues (and others) on petitioner's appeal.

It follows that petitioner is not entitled to a writ of habeas corpus.

**3.** The trial court was not a party to the nolle prosequi. Under Missouri law the prosecution had the unfettered right to enter the nol. pros. without the consent of the court.

**4.** The second trial was before still another judge (Walsh).