**UNITED STATES of America ex rel. Robert W. LLOYD, Petitioner-Appellee,**

**v.**

**Leon J. VINCENT, Superintendent, Green Haven Correctional Facility, Respondent-Appellant.**

**No. 883, Docket 75–2021.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1975.

Decided July 16, 1975.

Certiorari Denied Nov. 3, 1975. See 96 S.Ct. 296.

Eugene Murphy, Mineola, N. Y. (James J. McDonough, Atty. in Charge, Legal Aid Society of Nassau County, Mineola, N. Y., on the brief, Matthew Muraskin, Mineola, N. Y., of counsel), for petitioner-appellee.

Burton Herman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellant.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal by the State of New York from an order of the United States District Court for the Eastern District of New York, granting petitioner's application for a writ of habeas corpus, vacating the judgment of conviction and directing a new trial within sixty days or dismissal of the indictment. The district court concluded that petitioner had been denied his sixth amendment right to a public trial by the exclusion of the public from the courtroom during the testimony of two undercover agents who were key government witnesses. A stay of the order was granted by the district court pending the determination of this appeal. We reverse the order of the district court.

Appellee Lloyd was convicted of two counts of criminally selling a dangerous drug in the third degree after a jury trial in the County Court, Nassau County. On October 19, 1973, he was sentenced to state prison for two concurrent four year terms. The judgment of conviction was affirmed without opinion by the Appellate Division, 45 A.D.2d 912, 356 N.Y.S.2d 219 (2d Dep't 1974), and leave to appeal to the Court of Appeals was denied. 34 N.Y.2d 519, 359 N.Y.S.2d 1026, 316 N.E.2d 884 (1974).

At trial, the State's primary witnesses were two undercover agents from the Narcotics Squad of the Nassau County Police Department. The prosecutor made an application to close the court to spectators while the undercover agents testified on the ground that the exclusion was necessary in order to maintain the confidentiality of the agents who, at the time of trial, were still actively engaged in undercover work in Nassau County areas. Defense counsel objected to the exclusion, asserting the right to a public trial under the sixth amendment. After ascertaining that neither defense counsel nor his client had in mind any particular person whom they wanted present in the courtroom, the judge granted the state's application and ordered the courtroom cleared of all spectators during the agents' testimony. At this time only one spectator, unknown to all parties, was present.

After his ruling, the judge offered defense counsel an additional opportunity to present reasons why the courtroom should not be cleared. Defense counsel reasserted the right to a public trial. The judge then reaffirmed his ruling stating that he was required to weigh the defendant's constitutional rights against the countervailing need for confidentiality and citing in support of his decision to close the courtroom the need to protect the identity of the agents in view of the continuing investigation they were undertaking and the danger to their lives posed by testifying publicly.

██ In the trial court, defense counsel cast his objection to the exclusion order in terms of defendant's absolute right to a public trial. However, as the defense now concedes, the right to a public trial, guaranteed by the sixth amendment and made applicable to the

states by virtue of the due process clause of the fourteenth amendment, see *Duncan v. Louisiana,* 391 U.S. 145, 148, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 603 (3d Cir. 1969) is clearly not an absolute right. Rather, the courts have recognized, as did the trial judge here, that the right to a public trial must be balanced against other interests which might justify the closing of the courtroom to the public. Thus the exclusion of the public in whole or in part has been found constitutionally acceptable where closed proceedings were deemed necessary to preserve order, to protect the defendant or witnesses, or to maintain the confidentiality of certain information. *E. g., United States v. Bell,* 464 F.2d 667 (2d Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972) (public excluded during discussion of skyjacker profile); *United States ex rel. Bruno v. Herold,* 408 F.2d 125 (2d Cir. 1969), cert. denied, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970) (some spectators removed to avoid harassment of witness); *United States ex rel. Orlando v. Fay,* 350 F.2d 967 (2d Cir. 1965), cert. denied *sub nom. Orlando v. Follette,* 384 U.S. 1008, 86 S.Ct. 1961, 16 L.Ed.2d 1021 (1966) (all spectators except press removed to protect witnesses and preserve order); *Geise v. United States,* 262 F.2d 151 (9th Cir. 1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959) (most spectators excluded in rape case where prosecutrix and two other witnesses were of tender years and a large audience would inhibit testimony); *Melanson v. O'Brien,* 191 F.2d 963 (1st Cir. 1951) (general public excluded by state law in sex crime case where victim was a minor). See also *Sheppard v. Maxwell,* 384 U.S. 333, 358, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (authorizing limitation of the press and media during the trial to protect the defendant); *Stamicarbon, N.V. v. American Cyanamid Co.,* 506 F.2d 532, 539–40 (2d Cir. 1974) (authorizing partial restrictions on access to contempt proceedings when necessary to protect the confidentiality of trade secrets). We are convinced that the interest of the state and of the witnesses in preserving the confidentiality of undercover agents in narcotics cases presents an equally persuasive justification for the exclusion of the public during the limited period while an undercover agent is testifying.

■■  In reaching this decision we are not unmindful of the fact that the right to a public trial fulfills important functions in our system of jurisprudence, serving both to protect the defendant from being dealt with unjustly and to preserve public trust in the judicial process by preventing the abuses of secret tribunals. *Estes v. Texas,* 381 U.S. 532, 538–39, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *In re Oliver,* 333 U.S. 257, 268–73, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Stamicarbon, N.V. v. American Cyanamid Co., supra,* 506 F.2d at 540–41. Nor are we unaware of the precept that the court's discretion to order exclusion should be sparingly exercised and limited to those situations where such action is deemed necessary to further the administration of justice. See *Stamicarbon, N.V. v. American Cyanamid Co., supra* at 542; *cf. United States v. Ruiz-Estrella,* 481 F.2d 723, 725–26 (2d Cir. 1973); *United States v. Clark,* 475 F.2d 240, 246–47 (2d Cir. 1973). These considerations however must be balanced against our recognition of the risks both to the agent and to the law enforcement process attendant upon the public testimony of a police witness who is actively engaged in ongoing narcotics investigations in an undercover capacity. It is obvious that exposure in a public courtroom would not only imperil the agent but would render him useless for any further investigative activities. Moreover, the restriction on public attendance under consideration here is a limited one, covering only the period when an undercover agent is on the stand; we think it highly improbable that an exclusion thus circumscribed will seriously deprive defendants of the benefits of a public trial. See *Stamicarbon, N.V. v. American Cyanamid Co., supra,* 506 F.2d at 541. Accordingly, we conclude, as have the New York courts, that shielding the identity of a police witness, preserving

his future usefulness, and safeguarding his life provides an adequate justification for excluding the public for that limited period while an undercover agent is testifying. *People v. Hinton,* 31 N.Y.2d 71, 75, 334 N.Y.S.2d 885, 889, 286 N.E.2d 265 (1972), cert. denied, 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973); *People v. Pacuicca,* 134 N.Y.S.2d 381 (Bronx County Ct.1954), aff'd, 286 App.Div. 996, 144 N.Y.S.2d 711 (1st Dep't 1955).[1]

■■■ Petitioner contends that it was error to exclude the public solely on the basis of the prosecution's asserted need for confidentiality without requiring a showing that the agents' confidentiality would be jeopardized or that their lives would in fact be endangered. While we wish to make it clear that the better course would have been for the trial judge to hold an evidentiary hearing, we think that it was within the court's power to make a finding that exclusion was required on the basis of his judicial knowledge of the role of undercover agents. The trial judge could properly take notice of the facts that undercover agents lived a perilous life in Nassau County and were not easily replaced and that their mere appearance in court as witnesses against appellee who was accused of dealing in narcotics created a risk of exposure of their identities to actual or potential targets of their active investigations. *Cf. United States v. Bell, supra,* 464 F.2d at 669. The trial judge repeatedly suggested that defendant's counsel offer some reason for the admission of the public to the trial during the agent's testimony but received no response other than assertions by counsel that defendant was absolutely entitled to a public trial. There was no suggestion that the agents' identities were generally

known or that their occupation was not hazardous. Furthermore, in response to the judge's query, it was conceded that neither defense counsel nor his client had in mind any particular person whom they wanted present in the courtroom. Under these circumstances the trial judge did not abuse his discretion by deciding that preserving the confidentiality of the undercover agents who were working on narcotics cases outweighed the limited burden which was placed on the right to a public trial by closing the courtroom only for that period while the undercover agents were testifying.

The order of the district court is reversed.

LUMBARD, Circuit Judge (concurring):

I concur.

Any judge of a court which is concerned with the prosecution of offenses against the narcotics laws knows all too well the great dangers and difficulties which face law enforcement officers who seek to get evidence and who appear as witnesses before grand juries and in courts of law. In no area of law enforcement have murder, mayhem and terror been more frequently used against disclosure and testimony. Against this background of judicial knowledge and notice, the undisputed assertion of the district attorney that the two witnesses were then "actively undercover agents with the Narcotics Squad of the Nassau County Police Department" was sufficient reason for the county judge's action in closing the court to spectators during their testimony.[1]

---

1. We see no merit in appellee's attempt to distinguish *Hinton* from the case at bar on the ground that in that case other targets in the narcotics investigations were present in the courtroom. The rationale for the exclusion in both *Hinton* and *Pacuicca* was to minimize the risks to an agent and to the law enforcement process attendant upon the public testimony of a police witness who is actively engaged in other narcotics investigations and whose identity is unknown to the public. The *Hinton* opinion makes it clear that the presence of

other investigatory targets in the courtroom was viewed as an "added factor" justifying the exclusion order and was not essential to the decision. See 31 N.Y.2d at 75, 334 N.Y.S.2d at 889.

1. The subsequent testimony of the agents under oath confirmed the prosecutor's assertion that they continued to be active undercover agents in Narcotics Squad of the Nassau County Police Department.

Moreover, the defendant gave the county judge no reason to believe that in this case such action would in any way prejudice the defense. Counsel's only argument in opposing the state's motion was to assert the right to a public trial.

Chief Judge Mishler in granting the writ relied largely on the failure of the state to make any showing, beyond the prosecutor's unsworn assertion, that the confidentiality of the agents would be jeopardized and that their lives would be endangered. In most cases such a showing must be made, preferably by witnesses under oath, regarding the particular dangers and considerations in view of the circumstances of the particular case and the witnesses whose identity the state seeks to safeguard. Indeed, as Judge Hays points out, the better course would have been to hold an evidentiary hearing in this case.