**Donald L. JONES, Petitioner-Appellant,**

v.

**Robert J. HENDERSON, Robert Abrams, New York State Attorney General and the District Attorney of Nassau County, Respondents-Appellees.**

No. 1275, Docket 85–2320.

United States Court of Appeals, Second Circuit.

Argued May 6, 1986.

Decided Jan. 13, 1987.

Michael Young, New York City, for petitioner-appellant.

Lawrence J. Schwarz, Asst. Dist. Atty., Mineola, N.Y. (Dennis Dillon, Dist. Atty., Nassau County, Bruce E. Whitney, Asst. Dist. Atty., Mineola, N.Y., of counsel), for respondents-appellees.

Before VAN GRAAFEILAND, KEARSE and MINER, Circuit Judges.

MINER, Circuit Judge:

Petitioner-appellant Donald L. Jones, a New York State prisoner, appeals from a judgment of the United States District Court for the Eastern District of New York (Wexler, J.), 580 F.Supp. 273, denying his successive petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 (1982). Petitioner challenged his 1974 state court conviction, asserting infringement of his sixth amendment right to a public trial because of the closure of the courtroom during a prosecution witness' testimony and its continued closure for the remainder of his trial. The district court denied the first claim on the ground that it had been presented and rejected on the merits in a prior habeas petition. The second claim was denied on the basis of procedural default. Petitioner contends on appeal that the merits of his claims should be reached (1) because intervening changes in the law warrant relitigation of his attack on closure during the witness' testimony notwithstanding prior rejection of the claim, and (2) because he has demonstrated adequate cause for any procedural default as to his challenge to the continued closure of the courtroom.

We affirm the district court's rejection of petitioner's second claim on grounds of procedural default. We remand in order for the district judge to determine whether to entertain the claim arising from closure during the witness' testimony. That determination requires application of the "ends of justice" analysis of *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), pertaining to claims rejected on the merits in prior habeas petitions. Applying the "ends of justice" test, the district court may consider whether a relevant change in the law has occurred. The court may also consider whether the petitioner has asserted a colorable claim of factual innocence, a factor discussed in *Kuhlmann v. Wilson*, — U.S. —, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). The district court should address the merits of this successive petition only if it finds that the "ends of justice" will be served thereby.

Accordingly, we affirm in part, vacate in part and remand.

## I. BACKGROUND

In January of 1974, Jones was tried in Nassau County Court, charged with one count of sale of a dangerous drug in the third degree, in violation of N.Y.Penal Law § 220.35, *repealed by* Act of May 8, 1973, ch. 276, § 18, 1973 N.Y.Laws 1040, 1048 (current version at N.Y.Penal Law § 220.39 (McKinney 1980)), and one count of criminal possession of a dangerous drug in the fourth degree, in violation of N.Y.Penal Law § 220.15, *repealed by* Act of May 8, 1973, ch. 276, § 18, 1973 N.Y.Laws 1040, 1048 (current version at N.Y.Penal Law § 220.09 (McKinney Supp.1986)). The charges resulted from Jones' alleged sale of .037 grams of hashish to Nassau County Police Officer William Cooper.

At trial, the state called as one of its four witnesses Patrolman Stephen DeSaro of the Nassau County Police Department Narcotics Bureau. Immediately before Officer DeSaro took the witness stand, the prosecution requested that the courtroom be sealed during his testimony because of his continuing activities as an undercover officer. Defense counsel objected, arguing that

allowing the People to close the courtroom because of an undercover officer supposedly sometimes working under cover, I believe adds an element of secrecy to the case.... The witness comes into the courtroom and testifies for the People, and to put him on the stand in this type of secrecy, when the courtroom has been closed I think leads the jury to believe that his testimony is in fact true....

App. at 28–29. The trial judge overruled the objection and closed the courtroom during Officer DeSaro's testimony. Jones claims that the courtroom remained closed for the rest of the trial, while the state contends that it was reopened at the conclusion of DeSaro's testimony. The record is silent on this question. The jury convicted Jones on both counts and he was sentenced to a five-year term of probation.

On appeal, Jones was represented by different counsel who argued, *inter alia*, that the closure of the courtroom during DeSaro's testimony deprived Jones of his sixth amendment right to a public trial. Appellate counsel, however, did not argue that the courtroom had remained closed after DeSaro's testimony. On January 6, 1975, the New York Appellate Division, Second Department, affirmed the conviction without opinion. On March 5, 1975, the New York Court of Appeals denied leave to appeal.

On May 19, 1977, Jones filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982) in the United States District Court for the Eastern District of New York. The petition asserted infringement of Jones' sixth amendment right to a public trial because of the courtroom closure during Officer DeSaro's testimony, "without any showing of circumstances making it necessary to protect the identity of witnesses, or to preserve order in the court or to further the administration of justice." App. at 4. Absent from the petition was any allegation that the courtroom remained closed for the duration of the trial.

District Court Judge Eugene H. Nickerson denied the petition in a Memorandum and Order dated December 2, 1977, relying primarily upon *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975). In *Lloyd* we concluded that although "the better course would have been for the trial judge to hold an evidentiary hearing," there was no constitutional error in the exclusion of the public from the courtroom "solely on the basis of the prosecution's asserted need for confidentiality without requiring a showing...." *Id.* at 1275. The habeas petition was therefore denied, but Judge Nickerson subsequently issued a certificate of probable cause. This Court denied Jones' motion for assignment of counsel and leave to proceed *in forma pauperis*, and on April 4, 1978, we dismissed the appeal.

Jones thereafter moved twice in the district court for reconsideration of his habeas petition. Petitioner argued in his first motion that an intervening decision of the New York Court of Appeals required the court to grant his petition. Jones based this assertion upon *People v. Yohura Jones*, 47 N.Y.2d 409, 418 N.Y.S.2d 359, 391 N.E.2d 1335, *cert. denied*, 444 U.S. 946, 100 S.Ct. 307, 62 L.Ed.2d 315 (1979), which held that closure of a courtroom during witness testimony is reversible error in the absence of a factual showing that closure is required for compelling reasons. The district court, however, denied reconsideration on the ground that the state court decision relied upon was not binding on a federal court.

Petitioner's second motion for rehearing included for the first time an assertion that the courtroom had remained closed after DeSaro's testimony. Jones argued that reconsideration of his petition was warranted in light of *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), in which the Supreme Court held that the first amendment rights of the press and public to attend criminal trials were infringed when the courtroom was closed. Emphasizing the dissimiliar factual setting and the different constitu-

tional rights at issue in *Richmond*, the district court again denied reconsideration on August 25, 1980.

Jones then renewed his efforts in the state courts. On February 13, 1981, Jones filed a motion in the Nassau County Court to vacate his judgment of conviction, again basing his attack on closure during DeSaro's testimony. Apparently for the first time before a state court, petitioner also asserted that the courtroom remained closed for the remainder of the trial. The county court denied both claims. As to the attack on closure during DeSaro's testimony, the court found the claim barred because it previously had been raised before the New York appellate courts. The court found appellant's other claim procedurally barred inasmuch as this ground was not preserved on the trial record. Leave to appeal was denied by the New York Appellate Division on December 15, 1981.

On January 21, 1982, eight years after his original conviction, Jones filed this successive habeas corpus petition in the United States District Court for the Eastern District of New York, primarily arguing that his right to a public trial was violated by closure of the courtroom both during and after Officer DeSaro's testimony.[1] The petition was denied on January 5, 1984. As to petitioner's challenge to closure during DeSaro's testimony, District Judge Wexler ruled that as the claim had been presented and rejected in the first habeas proceeding, it could not be relitigated. Judge Wexler also rejected Jones' arguments that the law had been changed under *People v. Yohura Jones*, pointing out that the case was not binding on federal courts and that it was

not accorded retroactive effect even by the state courts.

As to the sixth amendment claim based on courtroom closure for the duration of the trial, the judge ruled that it was barred because appellant's failure to raise it in a timely manner before the state courts constituted procedural default under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Judge Wexler also concluded that in light of Jones' failure to raise this claim in the first habeas petition, his present attempt to do so constituted an abuse of the writ under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("Federal Habeas Rules").

After the district court issued a certificate of probable cause, Jones filed a timely notice of appeal. This Court appointed counsel to represent him on appeal.

## II. DISCUSSION

In the successive habeas petition now before us, Jones renews his challenge to the closure of the courtroom both during and after Officer DeSaro's testimony. Petitioner contends that he is entitled to relitigate his claim of improper closure during the DeSaro testimony because of a change in the law allegedly resulting from the decision in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), a case that was decided after the denial of his second habeas petition in January of 1984, but prior to appellate argument before this Court. Jones also maintains that as to his allegation of continued closure after DeSaro's testimony, his arguments to the state appellate courts were adequate to prevent procedural default. Alternatively, he ar-

---

**1.** Although Jones' second petition was not filed until some three years after the scheduled expiration of the period of probation to which he was sentenced on the challenged conviction, the government has not questioned the district court's jurisdiction to entertain the petition. Presumably, the absence of any dispute as to the court's jurisdiction is a result of the fact that in 1977, before the end of the probation period, Jones was convicted and incarcerated on unrelated charges, which prevented completion of the original probation period. Jones remained

a prisoner at the time of both his first and his second habeas petitions, and his present petition indicates that he still faces charges of having violated his probation. At the time of his 1982 petition, therefore, Jones was "in custody" within the meaning of 28 U.S.C. § 2254. *Cf. Jones (John R.) v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (a petitioner is "in custody" within the meaning of the federal habeas statute even if he has been released on parole from immediate physical confinement).

gues that if procedural default is found, he has demonstrated sufficient cause for and prejudice from the default to warrant examination of his claim under *Wainwright v. Sykes.*

For the reasons set forth below, we find the continued closure claim barred by procedural default. We remand to the district court to determine, under the "ends of justice" analysis set forth in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), whether the claim based on closure during the DeSaro testimony should be reconsidered.

### A. *The Continued Closure of the Courtroom*

In urging consideration of his claim that the continued closure of the courtroom violated his sixth amendment right, petitioner contends that there was no procedural default because this claim is merely an extension of his primary challenge to closure during Officer DeSaro's testimony. In the alternative, petitioner argues that if procedural default is found, he may still litigate the claim because he has satisfied the "cause and prejudice" test of *Wainwright v. Sykes.* We find petitioner's arguments unpersuasive on both counts.

█ It is undisputed that Jones failed to present this claim to the state courts on appeal; in fact, the Nassau County Court denied petitioner's motion to vacate judgment for this reason. The record amply supports such a determination. Petitioner's assertion that this claim is simply an extension of his primary sixth amendment claim is similarly unavailing. In the absence of any indication in the record that petitioner's counsel ever presented this argument on appeal, we may not assume that the state appellate court considered it as part of the principal sixth amendment claim. To the contrary, we conclude that a procedural default occurred.

Such a default before the state courts precludes federal habeas review of the claim unless the petitioner demonstrates cause for and prejudice from the default as required by *Wainwright v. Sykes.* Peti-

tioner attempts to establish cause by characterizing the failure to raise the claim on direct appeal as an inadvertent omission on the part of his attorney, who was unaware of the courtroom closure following the DeSaro testimony. This contention must be rejected under the recent Supreme Court decision in *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), where the Court ruled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, ... does not constitute cause for a procedural default." *Id.* at ——, 106 S.Ct. at 2645, 91 L.Ed.2d at 407. Because petitioner has failed to demonstrate cause, we need not consider his allegations of prejudice. We therefore conclude that the district court properly declined to entertain petitioner's claim of sixth amendment violations resulting from the continued closure of the courtroom at trial.

### B. *The Closure of the Courtroom During DeSaro's Testimony*

Petitioner's claim that the closure of the courtroom during the testimony of Officer DeSaro infringed upon his sixth amendment right has been presented and rejected in a prior federal habeas proceeding. In light of the prior rejection, we must turn to a discussion of the limited circumstances under which relitigation is permitted.

Under 28 U.S.C. § 2244(b) (1982),

> a subsequent application for a writ of habeas corpus ... need not be entertained by a [federal court] unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application ... and unless the court, ... is satisfied that the applicant has not ... abused the writ.

Accordingly, Rule 9(b) of the Federal Habeas Rules provides that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits...." As these provisions make clear, the law disfa-

vors successive habeas petitions, and while the courts should consider them only in "rare instances," they do possess the "discretion to entertain" successive petitions. Advisory Committee Note to Federal Habeas Rule 9(b).

In *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court set forth the circumstances under which prior determinations on the merits may effectively bar relitigation of habeas claims. The Court ruled that

> [c]ontrolling weight may be given to denial of a prior application for federal habeas corpus ... relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Id.* at 15, 83 S.Ct. at 1077 (footnote omitted). Properly applied, the *Sanders* analysis requires a finding that all three of the enumerated factors are present before relitigation of previously rejected claims may be conclusively barred.

Because it is clear to us that Jones' claim based on closure during the DeSaro testimony has been presented in a prior application and that it was rejected on the merits, we conclude that the first two *Sanders* conditions are satisfied. As a result, the prior denial of Jones' claim may be given controlling weight only if the "ends of justice" will not be served by reconsideration. It is, therefore, the "ends of justice" analysis to which we now turn our attention.

*Sanders* instructs that "the burden is on the applicant to show that ... the ends of justice would be served by a redetermination...." *Id.* at 17, 83 S.Ct. at 1078. The Court went on to discuss situations where reconsideration of a previously rejected habeas claim would be warranted, one of which is relevant to the present petition: "If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law...." *Id.*

Petitioner argues that an intervening change in the law has occurred, placing primary reliance on the Supreme Court's decision in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In *Waller*, the Court was presented with a sixth amendment claim stemming from the closure of a suppression hearing. It held that

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48, 104 S.Ct. at 2216.

Whether the decision in *Waller* in fact reflects a change in the law as petitioner asserts is a question for the district judge's determination. Should he find that the law has changed as a result of the *Waller* holding, he may decide whether to entertain the petition. We point out only that should he decide to reconsider the petition, a determination must be made as to whether the facts underlying petitioner's claim come within the scope of the change occasioned by *Waller* and whether *Waller* represents a change that should be applied retroactively under the guidelines set forth by the Supreme Court in *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), and *Allen v. Hardy*, — U.S. —, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam).

We believe it is also important to consider the Supreme Court's recent decision in *Kuhlman v. Wilson*, — U.S. —, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), in which the Court revisited the "ends of justice" test. In *Kuhlman*, a habeas petitioner, whose claim had been rejected on the merits in a prior federal habeas proceeding, applied for a rehearing on the basis of intervening changes in the law. Four Justices of the Court concluded that "the 'ends of justice' require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a

colorable showing of factual innocence." *Id.* at ——, 106 S.Ct. at 2627, 91 L.Ed.2d at 381.

In his dissenting opinion, Justice Stevens expressed his belief that such a claim of innocence does have a legitimate place in the "ends of justice" analysis, but was unwilling to join the plurality in requiring it. Justice Stevens concluded that in determining "whether the 'ends of justice' would be served ... one of the facts that *may* properly be considered is whether the petitioner has advanced a 'colorable claim of innocence.' But ... this is not an *essential* element of every just disposition of a successive petition." *Id.* at ——, 106 S.Ct. at 2639, 91 L.Ed.2d at 396 (Stevens, J., dissenting) (emphasis added).

The common ground of the plurality opinion and the Stevens dissent, therefore, is that courts may consider whether there are colorable claims of innocence when presented with successive habeas petitions containing claims previously rejected on the merits. Accordingly, we instruct the district court that on remand, in determining whether to review the petition on the merits, it is free to consider whether petitioner has supplemented his claim with a colorable showing of innocence, just as it may consider whether an intervening change in the law has taken place.

## III. CONCLUSION

In conclusion, we hold that the district court properly rejected petitioner's challenge to closure of the courtroom following Officer DeSaro's testimony. We remand in order for the district judge to determine whether to entertain the claim based on closure during the officer's testimony. This claim may be reviewed on the merits upon a determination by the district judge that the "ends of justice" would be served by undertaking such a review, and the burden is on the petitioner to make such a showing. In making that determination, the judge may consider whether changes in the law have occurred and he may consider whether petitioner has made a colorable showing of factual innocence.

Accordingly, we affirm in part, vacate in part and remand for further proceedings consistent with this opinion.

KEARSE, Circuit Judge, concurs in a separate opinion.

KEARSE, Circuit Judge, concurring:

I concur in the partial affirmance and in the decision to remand to the district court for further consideration, although I believe we should direct the district court to entertain the petition and reach the merits of the issue of the initial closure of the courtroom. My slight divergence from the majority is based on what I see as the purely legal questions of the effects of the Supreme Court's recent decisions in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and *Kuhlmann v. Wilson,* —— U.S. ——, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

It appears to me that *Waller v. Georgia,* decided after the district court's denial of the present petition, does reflect a change in the law. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." It had long been held in the lower federal courts and state courts that this provision, which is applicable to state court prosecutions through the Due Process Clause of the Fourteenth Amendment, *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948), generally guarantees the defendant the right not to have the courtroom closed over his objection, absent the need to protect a higher conflicting interest that can only be protected by closure. *See, e.g., United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272, 1274 (2d Cir.) (*"Lloyd"*) (citing cases), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975). Prior to *Waller,* however, the lower court decisions such as *Lloyd* generally did not impose rigorous procedural standards to safeguard that right. Further, the great majority of pre-*Waller* Supreme Court cases discussing public trial concerned the desire of the press to attend the broadcast criminal pro-

ceedings, contrary to the wish of the defendant, *see, e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and had focused primarily on the First Amendment rights of the press and the public rather than on the Sixth Amendment rights of the accused, *see Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 516–20, 104 S.Ct. 819, 827–29, 78 L.Ed.2d 629 (1984) (*"Press-Enterprise I"*) (Stevens, *J.,* concurring); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603–07, 102 S.Ct. 2613, 2618–20, 73 L.Ed.2d 248 (1982); *Richmond,* 448 U.S. at 575–80, 100 S.Ct. at 2826–29 (plurality opinion).

In *Press-Enterprise I,* decided after the district court issued its decision in this case, the Supreme Court ruled that

[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

464 U.S. at 510, 104 S.Ct. at 824; *see Press-Enterprise Co. v. Superior Court,* —— U.S. ——, 106 S.Ct. 2735, 2741, 92 L.Ed.2d (1986) (*"Press-Enterprise II"*) (same); *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 606–07, 102 S.Ct. at 2619–20. Thus, the Court "made clear that the [First Amendment] right to an open trial may give way in certain cases to other rights or interests, such as ... the government's interest in inhibiting disclosure of sensitive information," *Waller v. Georgia,* 467 U.S. at 45, 104 S.Ct. at 2215; it noted that such circumstances would be rare, and that "the balance of interests must be struck with special care," *id.* The *Press Enterprise I* Court did not consider the extent of the Sixth Amendment right of the defendant or establish specific requirements as to the procedures to be followed by the trial court in balancing the competing interests.

*Waller* involved a suppression hearing closed over the defendant's objection, and it called on the Supreme Court to interpret, in that context, the public trial guarantee found in the Sixth Amendment. Noting that it "ha[d] not recently considered the extent of the accused's right under the Sixth Amendment," *id.* at 44, 104 S.Ct. at 2214, the *Waller* Court adopted the *Press-Enterprise I* standard to govern cases in which the defendant asserts that his Sixth Amendment right to a public trial has been violated. It ruled that "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. at 2216; *see id.* at 45–47, 104 S.Ct. at 2214–2215.

The principles established by *Waller* with respect to the closure of pretrial proceedings, derived from the Court's conception of what the Sixth Amendment requires with respect to the openness of trials, apply *a fortiori* to the criminal trials themselves. These principles, although they do not appear to confer substantive constitutional rights that had not previously been recognized in the lower federal courts, plainly impose procedural requirements more stringent that we had previously held necessary to comply with the Sixth Amendment. For example, in the district court proceedings on both of Jones's petitions, neither district judge believed that a searching inquiry into the factual basis for the prosecution's request for closure was required under the Sixth Amendment. In *Lloyd,* this Court, while recognizing that the defendant's right must be balanced against other interests that might justify closing the courtroom to the public, had not imposed stringent requirements on the trial courts as to the procedural mechanisms by which the defendant's rights were to be preserved. We stated that although "the better course would have been for the trial judge to hold an evidentiary hearing, we

think that it was within the court's power to make a finding that exclusion was required on the basis of his judicial knowledge of the role of undercover agents." 520 F.2d at 1275.

Since *Waller* has established new constitutional standards of criminal procedure, "creat[ing] a protective umbrella serving to enhance a constitutional guarantee," *Michigan v. Payne*, 412 U.S. 47, 54, 93 S.Ct. 1966, 1970, 36 L.Ed.2d 736 (1973), I think Jones is entitled, under the ends-of-justice test established by *Sanders v. United States*, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 1077–78, 10 L.Ed.2d 148 (1963), to have the district court consider the merits of his present habeas petition.

I do not view *Kuhlmann v. Wilson*, 106 S.Ct. 2616, as having substantially altered *Sanders's* ends-of-justice test, which is quoted in the majority opinion, *ante* at 951. In *Wilson*, four members of the Court adopted the view that "the 'ends of justice' require federal courts to entertain [successive habeas] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Id.* at 2627 (plurality opinion of Powell, *J.*). Three Justices expressly dissented from this view, however, *see id.* at 2631, 2634–35 (Brennan, *J.*, dissenting); *id.* at 2639 (Stevens, *J.*, dissenting); and two others, while agreeing with the result reached by the plurality, declined to join in the parts of the plurality opinion that advocated adding the "colorable showing of factual innocence" requirement to the ends-of-justice test, *see id.* at 2618. Since less than a majority of the Court has taken the position that the *Sanders* test is so modified, I would not suggest to the district court, especially in a case involving a constitutional right having value reaching beyond the trial court's truth-seeking function, that it need not entertain a repetitive writ that is based on intervening developments in the law regarding that right simply because no colorable showing of innocence has been made.

In sum, I would remand to the district court for consideration, in light of *Waller*

*v. Georgia*, of the merits of the claim that the courtroom was closed during DeSaro's testimony. I express no view as to whether Jones is entitled to relief from his conviction. I agree with the majority that, in assessing the merits, the district court must consider whether *Waller* is to be given retroactive application, *see Allen v. Hardy*, —— U.S. ——, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986); *Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984), and if it is to be given such application, whether its effect is such as to warrant the vacation of Jones's conviction or the granting of other relief.