**Donald L. JONES, Petitioner,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility; Denis Dillon, District Attorney of Nassau County; and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. CV 82–0123.**

United States District Court, E.D. New York.

April 19, 1988.

Michael Young, New York City, for petitioner.

Denis Dillon, Nassau County Dist. Atty. by Bruce Whitney, Mineola, N.Y., for respondents.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This case is before the Court on remand from the Second Circuit for a determination as to whether the "ends of justice" test of *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) requires this Court to reach the merits of petitioner Donald Jones's successive application for a writ of habeas corpus and upon such finding, to address the arguments set forth in the petition.

## BACKGROUND

The facts surrounding this case are laid out in detail in the Second Circuit's opinion *Jones v. Henderson,* 809 F.2d 946 (2d Cir. 1987). This Court will, however, briefly review the background leading up to this decision.

Donald Jones was convicted after a jury trial in January 1974, in Nassau County Court of one count of sale of a dangerous drug in the third degree and one count of criminal possession of a dangerous drug in the fourth degree. Jones was sentenced to a five year term of probation. During the presentation of the state's case at trial, the prosecutor requested that the courtroom be sealed while one of its witnesses, Police Officer Stephen DeSaro, an undercover narcotics agent, testified. The court granted the state's request over the objection of defense counsel. On January 6, 1975, the Appellate Division of the Supreme Court of the State of New York unanimously affirmed the conviction without opinion. On March 5, 1975, the New York Court of Appeals denied petitioner leave to appeal.

On May 19, 1977, Jones filed in the United States District Court for the Eastern District of New York a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S. C. § 2254. The case was assigned to District Court Judge Eugene H. Nickerson, who, in a Memorandum and Order dated December 2, 1977, denied petitioner's request. Judge Nickerson based his decision on *United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272 (2d Cir.1975) *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975), which reversed a district court's grant of a writ of habeas corpus on the basis of courtroom closure during trial. The Second Circuit held:

> While we wish to make it clear that the better course would have been for the trial judge to hold an evidentiary hearing, we think that it was within the [state trial] court's power to make a finding that exclusion was required on the basis of his judicial knowledge of the role of undercover agents.

*Id.* at 1275.

Jones remained unsuccessful in two applications to the district court for reconsideration of his petition and a motion to the Nassau County Court for vacature of his conviction. Jones then filed a petition for a writ of habeas corpus with the instant Judge. In a Memorandum and Order dated January 5, 1984, this Court denied the petition, holding that the merits of petitioner's claim were already addressed by a judge of this Court and that there were no new developments in the case law that justified the relitigation of the issue of whether the sealing of the courtroom constitutes a denial of petitioner's right to a public trial. This Court issued a certificate of probable cause and petitioner filed a notice of appeal with the Second Circuit.

While this case was on appeal, the United States Supreme Court decided *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), which involved a Sixth Amendment challenge to the closure of a courtroom during a suppression hearing, and there held that:

> [T]he party seeking to close the hearing must advance an overriding interest that

is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. 467 U.S. at 48, 104 S.Ct. at 2216. In light of the Supreme Court's decision in *Waller,* the Second Circuit remanded the case to this Court and directed that if this Court determines that the "ends of justice" would thereby be served, this Court should entertain Jones's petition for a writ of habeas corpus.

## DISCUSSION

### *The "Ends of Justice" Test*

In considering whether the "ends of justice" would be served by reconsideration of the merits of the present petition, this Court is guided by the Supreme Court's instruction in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), that when an application for a writ of habeas corpus involves purely legal issues, the petitioner may be entitled to a re-adjudication of the unsuccessful merits determination "upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." 373 U.S. at 17, 83 S.Ct. at 1078. This Court is also mindful of the Supreme Court's words of caution: "[T]he foregoing enumeration is not intended to be exhaustive." *Id.*

In the present case, the legal issue is under what circumstances a courtroom proceeding may be closed to the public. The state of the law at the time of petitioner's first application for a writ of habeas corpus clearly provided that, although the right to an open criminal trial is not absolute, it is presumed, and any closure must be justified. *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

While petitioner's appeal to the Second Circuit was pending, the Supreme Court rendered its decision in *Waller,* which set forth more definitively the procedures that must be followed before the public can be excluded from the courtroom. Although

the Supreme Court in *Waller* did not over-rule any of its prior decisions and in fact was quite consistent with the earlier development of the law of closure, it did impose a more precise standard than it had previously enunciated and made clear that this standard governs in the context of an accused's right to a public trial under the Sixth Amendment.

Prior to *Waller*, the Supreme Court had not spoken recently on the issue of a criminal defendant's Sixth Amendment right to a public trial. The Court had, however, rendered several decisions concerning the right of the press and the public, under the First Amendment, to observe court proceedings. *See e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In these cases, the Court made clear that a criminal trial must be held in open court barring those rare instances where the balance of interests warrant closure. *Globe*, 457 U.S. at 606–07, 102 S.Ct. at 2620; *Richmond*, 448 U.S. at 581, 100 S.Ct. at 2829–30; *Gannett*, 443 U.S. at 392–93, 99 S.Ct. at 2912. After both the original District Judge and the present Judge denied Jones's applications, the Supreme Court decided *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), a First Amendment challenge to closure of a *voir dire* proceeding. The Court held that:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

464 U.S. at 510, 104 S.Ct. at 824.

Four months later, the Supreme Court handed down its opinion in *Waller*, which involved a criminal defendant's objection, on Sixth Amendment grounds, to court-room closure during a suppression hearing. The Court noted, "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46, 104 S.Ct. at 2215. The Court in *Waller* applied the same standards it articulated in *Press–Enterprise* to the Sixth Amendment challenge *Waller* presented.

While *Waller* in no way represents a departure from existing precedent, it does clarify and lend structure to a criminal defendant's otherwise amorphous right to an open trial, mandating steps that a trial judge must first take before granting the government's request for exclusion and therefore providing greater protection for the individual defendant. This Court finds that *Waller* does not constitute a change in the law in the sense that it introduces a new substantive constitutional right which provides for a result contradictory to one that would otherwise be required. Nor can it be said that the holding in *Waller* was unexpected as the decision built upon precedent governing the subject. *Waller*'s instructions do, however, constitute a sufficient furtherance of the relevant case law to satisfy the "intervening change" requirement of *Sanders*, particularly in light of *Sanders'* qualification regarding the illustrative nature of this factor.

This Court's conclusion is borne out by the history of the present case. The District Judge who reviewed the original petition relied on a decision of the Second Circuit in an analogous case, *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir.1975), *cert. denied*, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975). In *Lloyd*, the Court of Appeals found that the trial judge could impinge upon the defendant's public trial right solely "on the basis of his judicial knowledge of the role of undercover agents." *Id.* at 1275. This "judicial notice of the perilous lifestyle of undercover agents" standard does not pass constitutional muster under *Waller* and, therefore, *Waller* represents a different, more stringent test than that which was applied to Jones's previous petition. Thus, this Court finds that petitioner has met *Sanders'* "in-

tervening change in the law" requirement and the presentation of a successive petition is justified.

### Retroactivity

■ The Court must now consider whether this "change" should be applied retroactively such that Jones would be entitled to reap the benefits of *Waller's* more precise mandate. Supreme Court decisions concerning retroactivity exhibit a dichotomy between the treatment of cases on direct appeal and those presented to a court for collateral review. New precedents are to be applied retroactively to all cases pending direct appeal. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). New precedents are also to be applied to all cases on collateral review where the new decision represents a clarification of existing law. The rationale for affording retroactive application of holdings which clarify existing law is that "one could never say with any assurance that this court would have ruled differently at the time the petitioner's conviction became final." *Desist v. United States,* 394 U.S. 244, 264, 89 S.Ct. 1030, 1041, 22 L.Ed.2d 248 (Harlan, J. dissenting). Petitioner's case is on collateral review. Since as noted above, *Waller* represents a clarification of established precedent rather than a change in existing law, the Supreme Court's holding in *Waller* must be retroactively applied to the closure of petitioner's trial.

In addition, new decisions which are designed to "enhance the accuracy of the criminal trial" are also applied retroactively to cases on collateral review. *Allen v. Hardy,* 478 U.S. 255, 258–59, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (quoting *Solem v. Stumes,* 465 U.S. 638, 643, 104 S.Ct. 1338, 1342, 79 L.Ed.2d 579 (1984)). The central aim of criminal proceedings is to try the accused fairly. Supreme Court decisions have consistently recognized the public trial guarantee "as one created for the benefit of the defendant." *Gannett,* 443 U.S. at 380, 99 S.Ct. at 2905. A public trial ensures that the judge and prosecutor will carry out their duties responsibly. Public trials also encourage witnesses to come forward and discourages perjury. *Waller,*

467 U.S. at 46, 104 S.Ct. at 2215. *See In re Oliver,* 333 U.S. 257, 270, n. 24, 68 S.Ct. 499, 506, n. 24, 92 L.Ed. 682 (1948). The Sixth Amendment right to a public trial goes directly to the "heart of the truthfinding function." *Allen,* 478 U.S. at 259, 106 S.Ct. at 2880. Thus, public trials safeguard the accuracy and integrity of criminal proceedings.

Accordingly, since the procedural guidelines established in *Waller* directly concern the right to a public trial, which is intimately related to the accuracy of criminal proceedings, *Waller* must be afforded retroactive application.

### "Colorable Claim of Innocence"

■ The Second Circuit further instructed this Court that "it is free to consider whether petitioner has supplemented his claim with a colorable showing of innocence when determining whether the ends of justice would be met by considering this successive petition." *Jones,* 809 F.2d at 952. The Supreme Court first examined this factor in *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), which involved a successive application for a writ of habeas corpus on the ground that a change in the law had occurred subsequent to the petition's original disposition. The four Justice plurality concluded that a successive petitioner can only seek relief if he can demonstrate a "colorable claim of factual innocence". 106 S.Ct. at 2631. Two Justices rendered a dissenting opinion opposing consideration of petitioner's guilt or innocence as a factor, regardless of whether the application was successive or original. *Kuhlmann,* 106 S.Ct. at 2631. Two of the remaining Justices stood silent on the issue, and Justice Stevens, in his dissenting opinion, concluded that the existence or absence of a colorable claim of innocence is "one of the facts that *may* properly be considered" in the ends of justice analysis. 106 S.Ct. at 2639 (Stevens, J. dissenting) (emphasis added). Justice Stevens did, however, add that a colorable claim of innocence "is not an essential element of every just disposition of a successive petition." *Id.*

The Second Circuit concluded that since the common thread in the plurality opinion and Justice Stevens' dissent is the addition of factual innocence as a consideration that may be weighed by the district court before entertaining a successive petition, this factor may be applied to this Court's analysis of whether the ends of justice would be served by re-examination of Jones's request for habeas corpus relief.

This Court finds that Jones has not supplemented his petition with a "colorable claim of factual innocence." In this regard, petitioner merely points out that he pled "not guilty" to the crimes charged and that he continued to assert his innocence throughout the trial. The Court is of the opinion that this contention alone is insufficient to constitute a colorable claim of innocence.

Although Jones has not advanced a colorable claim of innocence, the Court is not foreclosed from finding that the ends of justice would be served by re-adjudicating the merits of his petition. First, the Second Circuit left to this Court's discretion the decision of whether to even consider the issue of petitioner's innocence. Quite candidly, this Court is troubled by the notion that the pursuit of habeas corpus relief from a constitutional violation is contingent on proof of one's innocence. The *per se* limitation on this constitutional remedy that the *Kuhlmann* plurality proposes extends far beyond the holding of *Sanders*, which vested in the district court the discretion to entertain a subsequent petition. The permissive language of the *Sanders* Court merely provided a mechanism by which a district court might avoid relitigating vexatious successive petitions that amount to an abuse of the writ. *Kuhlmann*, 106 S.Ct. at 2635–36 (Brennan, J. and Marshall, J. dissenting). The test announced in *Sanders* focuses exclusively on factors that would tend to show the existence of such an abuse and in no way attempts to reserve, as a privilege, this form of relief only for those who can first factually exculpate themselves. Thus, any consideration given to Jones's failure to advance a colorable claim of innocence certainly does not rise to a dispositive level.

In addition, any weight that might be afforded the absence of a colorable claim of innocence is minimized by the nature of the present petition. In this case, unlike in *Kuhlmann*, the substantive claim is not merely a challenge to the admissibility of evidence introduced at trial. Petitioner attacks a fundamental aspect of the manner in which the trial was conducted. *See Jones v. Henderson*, 809 F.2d 946, 952 (2d Cir. 1987) (Kearse, J., concurring) (suggesting that this Court not consider the question of Jones's innocence, particularly since this case involves "a constitutional right having value reaching beyond the trial court's truth-seeking function . . .").

The *Kuhlmann* plurality reasoned that "a requirement that the prisoner come forward with a colorable showing of innocence identifies those habeas petitioners who are justified in again seeking relief from their incarceration." *Kuhlmann*, 106 S.Ct. at 2627. This Court finds that justification for returning to a court for redress of a constitutional violation after such relief is denied does not arise out of one's lack of culpability but instead derives from circumstances of a legal and procedural nature which warrant a re-evaluation of an earlier determination as to the merits. Here, the district judge who heard the original petition relied on Second Circuit case law that supported the result the district judge reached. The Supreme Court's decision in *Waller* dictates structured guidelines for courtroom closure which provides greater procedural safeguards for an accused's right to a public trial than did *Lloyd*'s more lenient standard.

Jones's justification for re-presenting his petition is grounded in the district court's reliance on binding precedent which, under *Waller*, failed to afford full protection against a constitutional violation, the fundamental nature of the constitutional challenge, and the absence of any ill-faith on the part of the petitioner in continuing to pursue relief. The Court finds that petitioner has not abused the writ of habeas corpus and that the ends of justice would be served by reaching the merits of Jones's successive petition.

### The Merits

■ Turning to the merits of petitioner's application, the Court must determine whether the closure of the courtroom during petitioner's trial violated petitioner's Sixth Amendment right to a public trial. As this Court discussed earlier in this opinion, the Supreme Court in *Waller* set forth four prerequisites that must be satisfied before the presumption of openness may be overcome:

■ the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceedings, and [4] it must make findings adequate to support the closure.

467 U.S. at 43, 104 S.Ct. at 2216.

As to the first *Waller* requirement, the government did not advance any overriding interest that was likely to be prejudiced. The prosecutor merely indicated that the witness who was about to testify was, at that time, still working in an undercover capacity. Although it can be inferred from this assertion that the government's interest was in protecting the secrecy of the true identity of an undercover agent, the government offered no specific evidence which demonstrated the compelling character of this interest under the particular circumstances of Jones's trial and failed to present even the basic facts concerning the extent and nature of this witness's undercover duties. In excluding the public despite the absence of such information, the trial judge essentially adopted a *per se* rule that would require closure during the testimony of any witness who engages in undercover activities. In *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the Supreme Court, in the context of the testimony of a young rape victim, explicitly rejected a *per se* rule of courtroom closure. The Court held:

... as compelling as th[e] interest [in protecting minor victims] is, it does not justify a mandatory closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary....

457 U.S. at 609, 102 S.Ct. at 2620–21.

Similarly, in the present case, the trial court's closing of the courtroom without even considering the factual details underlying the prosecutor's blanket assertion that closure was necessary was improper and does not satisfy the overriding interest factor of *Waller*.

A trial court's assessment of the precise extent of the government's interest is essential to satisfy the second element of *Waller* as well. The trial court must focus upon the specific circumstances underlying the government's asserted interest if it is properly to determine the appropriate breadth of any closure that may be necessary in a given case.

As for *Waller*'s third prerequisite, the record clearly shows that the trial court did not consider possible alternatives to closing the proceeding. The trial court granted the prosecution's application for closure without even affording defense counsel an opportunity to be heard.[1] The objection

1. The following colloquy took place just before the government called the undercover officer to testify:

MR. CHASE: Your Honor, the People at this time request that inasmuch as Patrolman DeSaro is still an undercover officer, that this courtroom be sealed during his testimony.
THE COURT: So ordered.
MR. WOLSTEIN: Objection.
THE COURT: Overruled. So ordered.
MR. CHASE: May the courtroom be sealed?
MR. WOLSTEIN: Your Honor, may we approach the bench?

(The following occurred at the bench, not within the hearing of the jury:)
MR. WOLSTEIN: Your Honor, by allowing the People to close the courtroom because of an undercover officer supposedly sometimes working under cover, I believe adds an element of secrecy to the case so that the jury does not understand the reason or really relevant issues in this particular case. The witness comes into the courtroom and testifies for the People, and to put him on the stand in this type of secrecy, when the courtroom has been closed I think leads the jury to believe that his testimony is in fact true, and I think Judge Gibbons in another

defense counsel voiced was summarily overruled. Trial counsel then asked to approach the bench and stated his objection on the record. The judge at no time explored the feasibility of options other than complete closure of the trial.

The judge also failed, in violation of *Waller*'s fourth requirement, to articulate any findings to support the closure. The court merely "so ordered" the government's application, "overruled" defense counsel's objection and noted the objection for the record.

Since these prerequisites were not satisfied, the trial judge's order closing the courtroom during the undercover officer's testimony violated Jones's Sixth Amendment right to a public trial. Accordingly, petitioner's conviction was unconstitutionally reached and thus must be set aside.

The trial judge sentenced petitioner to a five year term of probation in connection with the conviction at issue. In 1977, however, before the end of the probation period, Jones was convicted and incarcerated on unrelated charges, the nature of which this Court is completely unaware. Therefore, this Court does not order the release of Jones from custody but merely vacates the 1974 conviction and the resulting sentence. Respondent is not barred from retrying the petitioner.

SO ORDERED.

case has decided that the courtroom should not be closed.